# EXHIBIT 1

Firm No. 39807

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| **DELYN MCKENZIE-LOPEZ and ERICA LIESCHKE, individually and on behalf of all others similarly situated,** | ) ) **CLASS ACTION COMPLAINT** ) |
| | ) 2016CH14304 |
| **Plaintiffs,** | ) **Case No.** _CALENDAR/ROOM 11_ |
| **v.** | ) TIME 00:00 |
| | ) Class Action |
| **CITY OF CHICAGO, a Municipal Corporation,** | ) **JURY DEMAND** |
| | ) |
| **Defendant.** | ) |
| | ) |

## COMPLAINT

Plaintiffs Delyn McKenzie-Lopez and Erica Lieschke ("Plaintiffs"), individually and on

behalf of a class of all others similarly situated, complain against Defendant City of Chicago (the

"City" or "Defendant") as follows:

### ONCE UPON A TIME...

*Once upon a time, there was a Mayor out of luck.*
*The Mayor had spent his City's last buck.*

*He asked all of his horses and men what to do,*
*but not a single one had a solitary clue.*

*But then a new staffer, short in stature, had a plan.*
*A plan that would fix all the problems in the land.*

*"Mr. Mayor!" he cried. "I know just what to do!*
*We'll spin straw into gold to raise revenue."*

*The Mayor got quiet. You could only hear crickets.*
*He had no straw at all, just void speed camera tickets.*

*The little aide jumped up. "Those old tickets are fine! The red light tickets too!*
*We'll take these void tickets and turn old debts into new!"*

*The Mayor smiled. He just had to laugh.*
*You can always balance the budget with Rumpelstiltskin on staff.*

1.      Unfortunately, this is no fairy tale.  It is just the latest chapter in the City of Chicago's scandal-plagued speed and red light camera program.

2.      Over the past decade, the City has collected hundreds of millions of dollars in fines and penalties from individuals accused of speed and red light camera violations.  Because the City failed to properly notify these individuals of their alleged violations and illegally sped up the imposition of liability, a Judge in the Circuit Court of Cook County recently held that those fines and penalties are illegal and void.  *See Simpson et al. v. City of Chicago*, Case No. 15 CH 4802 (Circuit Court of Cook County, Illinois).

3.      On the hook for hundreds of millions of dollars in illegal fines and penalties, the City recently passed an ordinance that purports to allow it to issue *new* tickets and initiate *new* hearings that will create *new* liabilities, fines and penalties based on tickets issued years ago that a Judge has already ruled were void.

4.      Unfortunately for the City, in the real world Rumpelstiltskin cannot save the day. That is because the Illinois Vehicle Code and the Illinois and United States Constitutions specifically prohibit the procedures the Ordinance purports to authorize.

## INTRODUCTION

5.      This action challenges the legality and constitutionality of the City of Chicago Automated Enforcement Violation Review and Refund Ordinance of 2016 (the "Automated Enforcement Ordinance" or "Ordinance"), which became effective on September 21, 2016.  The Automated Enforcement Ordinance purports to authorize administrative adjudications of alleged speed and red light camera offenses that occurred from approximately March 23, 2010 to May 14, 2015. A copy of the Automated Enforcement Ordinance is attached hereto as **Ex. A**.

2

6. All of the alleged violations covered by the Ordinance were previously subjected to administrative adjudications years ago. As explained below, however, none of the accused individuals subjected to those adjudications are liable for the alleged speed or red light camera violations due to the City's failure to follow mandatory notice provisions and improper acceleration of liability determinations and late penalties in violation of the law. In other words, these citizens won and the City lost.

7. Having failed the first time around to establish liability for these alleged violations, the City passed the Automated Enforcement Ordinance, not for the altruistic reasons it claims, but rather in a misguided and erroneous effort to get a second bite at the apple and attempt to impose liability for these same offenses years after-the-fact.

8. The City, however, cannot willy-nilly change its own laws to give itself a second opportunity to extract fines and penalties from its citizens. To the contrary, the City's ability to enforce speed and red light camera violations is specifically limited by Illinois law.

9. The Illinois Vehicle Code expressly limits a municipality's home rule authority to adjudicate speed and red light camera violations and requires that any procedures adopted by a municipality to adjudicate such violations be consistent with the specific time limitations and procedures enumerated in the Illinois Vehicle Code.

10. Nothing in the Illinois Vehicle Code, however, authorizes a second proceeding to adjudicate "new and separate" liability for past speed and red light camera violations. *Compare* 625 ILCS 5/11-208.3(a) (setting forth specific procedures for the one and only administrative proceeding authorized to impose liability for fines and penalties) *with* Automated Enforcement Ordinance (**Ex. A**) (setting forth very different procedures for a second administrative proceeding that will result in "new and separate" liability for offenses that occurred years ago).

3

11.     In fact, the Automated Enforcement Ordinance is at odds with virtually every procedural requirement of the Illinois Vehicle Code and completely undermines its purpose to ensure the "fair and efficient" adjudication of speed and red light camera violations.  625 ILCS 5/11-208.3(a).  Because the procedures set forth in the Automated Enforcement Ordinance are not authorized by and, in fact, are inconsistent with, the procedures specified in the Illinois Vehicle Code, the Ordinance is an abuse of the City's home rule authority and, therefore, is unconstitutional and invalid.

12.     The Ordinance, in fact, suffers from a litany of infirmities.  For example, it violates the Illinois Vehicle Code's prohibition on the administrative adjudication of speed and red light camera offenses that occurred prior to the effective date of the ordinance authorizing said adjudications.  *See* 625 ILCS 5/11-208.3(a) ("The administrative system shall only have authority to adjudicate civil offenses … that occur *after* the effective date of the ordinance adopting such a system under this Section.") (emphasis added).  In other words, the Illinois Vehicle Code prohibits a municipality from adopting an ordinance authorizing the administrative adjudication of past offenses, but the Automated Enforcement Ordinance purports to do just that.

13.     The Ordinance also authorizes the initiation of an administrative adjudication of alleged speed and red light camera offenses more than 90 days after the alleged offense, which violates the notice requirements of the Illinois Vehicle Code.  The Ordinance also imposes late payment penalties contemporaneously with a determination of liability, which also violates limitations imposed by the Illinois Vehicle Code.

14.     Equally, if not more disturbing, is that the City has already illegally and unlawfully assessed and/or collected fines and penalties for the speed and red light camera offenses subject to the Ordinance.  Yet now, years after the fact, the Ordinance purports to authorize the administrative

4

adjudication of liability for those fines and penalties. But the due process clause of the Illinois and United States Constitutions requires a hearing *before* deprivation of property, not the "shoot first ask questions later" system of adjudication authorized by the Ordinance.

15.     The Ordinance also impermissibly treats similarly situated groups of motorists in an unequal manner. Citizens who already paid the fine or penalty prior to the hearing authorized under the Ordinance are subject to an unequal penalty (double, in fact) compared to those who had previously not paid. The Ordinance also does not apply to similarly situated motorists who were previously mailed a determination of liability prior to March 23, 2010. These arbitrary distinctions in no way further the claimed purpose of the Ordinance, but rather were designed to line the City's pockets with money from its own citizens that it previously took unlawfully.

16.     Thus, the Ordinance not only violates the Illinois Vehicle Code, but also the due process and equal protection clauses of the Illinois and United States Constitutions.

## PARTIES

17.     Plaintiff McKenzie-Lopez is an individual residing in Chicago, Illinois. The City mailed her several determinations of liability, dated between May 29, 2014 and July 31, 2014, in connection with alleged speed and red light camera violations that allegedly occurred on April 29, 2014, May 14, 2014, May 22, 2014 and May 29, 2014. Ms. McKenzie-Lopez was the registered owner of the vehicle that was the subject of all of these alleged violations. Under duress, Plaintiff McKenzie-Lopez paid the fines and penalties assessed in connection with the alleged violation issued to her on May 29, 2014, but has not paid the fines and penalties assessed in connection with the alleged violations issued on April 29, 2014, May 14, 2014 and May 22, 2014. All of the alleged violations referenced above are subject to administrative adjudications under the Automated Enforcement Ordinance.

5

18.     Plaintiff Lieschke is an individual residing in Chicago, Illinois. The City mailed a determination of liability, dated August 12, 2010, to Ms. Lieschke in connection with an alleged red light camera violation that allegedly occurred on June 26, 2010. Ms. Lieschke was the registered owner of the vehicle that was the subject of this alleged violation. Under duress, Plaintiff Lieschke paid the fines and penalties assessed in connection with this alleged violation. The alleged violation referenced above is subject to an administrative adjudication under the Automated Enforcement Ordinance. Plaintiff Lieschke was also mailed a determination of liability, dated August 9, 2007, in connection with an alleged red light camera violation that allegedly occurred on June 24, 2007. Ms. Lieschke was the registered owner of the vehicle that was the subject of this alleged violation. Under duress, Plaintiff Lieschke paid the fines and penalties assessed in connection with this alleged violation. This alleged red light camera violation is not subject to an administrative adjudication under the Automated Enforcement Ordinance.

19.     Defendant City of Chicago ("Defendant" or the "City") is an Illinois Municipal Corporation.

### JURISDICTION AND VENUE

20.     Jurisdiction is proper pursuant to 735 ILCS 5/2-209(a)(1), (3) and (12), (b)(3) and (c) and venue is proper pursuant to 735 ILCS 5/2-101 because Plaintiffs are residents of Cook County, Illinois, Defendant is the City of Chicago and the events and transactions giving rise to the claims asserted herein occurred in Cook County, Illinois.

### FACTUAL ALLEGATIONS

A.     **The City's red light and speed camera programs and the existing procedures for administrative adjudication of alleged violations.**

21.     On July 9, 2003, the City of Chicago enacted an ordinance referred to as the automated traffic law enforcement ("ATL") program, which authorized the use of automated

6

cameras to record images of vehicles allegedly used in violation of red light signals. *See* Municipal Code of Chicago ("MCC") §§ 9–102–010 to 9–102–070 (added July 9, 2003). This ordinance also authorized procedures for the administrative adjudication of alleged ATL offenses. *See* MCC § 9-102-030 (added July 9, 2003) (authorizing the use of "administrative adjudication procedures for violations of Section 9-102-020").

22. On April 18, 2012, the City of Chicago enacted an ordinance, referred to as the automated speed enforcement ("ASE") program, which authorized the use of automated cameras to record images of vehicles allegedly used in violation of local speed limits. *See* MCC §§ 9–101–010 to 9–101–070 (added April 18, 2012). This ordinance also authorized procedures for the administrative adjudication of alleged ASE offenses. *See* MCC § 9-101-030 (added April 18, 2012) (authorizing the use of "administrative adjudication procedures for violations of Section 9-101-020").

## B. The City's improper efforts to create new administrate procedures to adjudicate prior alleged ATL and ASE violations that were rendered illegal and void.

23. Since the inception of the ATL and ASE programs, the City failed to comply with its own mandatory procedures for the administrative adjudication of alleged violations. More specifically, the City repeatedly failed to issue a mandatory second notice to citizens accused of ASE and ATL violations and prematurely issued liability determinations and late penalties. As a result of these unlawful practices, the City deprived citizens of the notice required under the law while accelerating its ability to impose liability and double the amount due on the ticket. In effect, the City illegally "sped up" the timeframe in which it could impose liability, fines and penalties on those motorists.

24. On March 23, 2015, Plaintiffs brought a class action lawsuit against the City seeking, among other things, a declaration that the fines and penalties assessed by the City in

7

violation of the MCC are void, an injunction preventing the City's collection on and enforcement of all such fines and penalties and to recoup the fines and penalties unlawfully collected by the City. *See Simpson et al. v. City of Chicago*, Case No. 15 CH 4802 (Circuit Court of Cook County, Illinois).

25.     After it was served with the *Simpson* lawsuit, the City did not change its conduct to conform to the law, but instead it simply changed the law. Specifically, at the behest of Mayor Rahm Emanuel, the City removed the procedural safeguards that it had never followed since the inception of the ATL and ASE programs. *See* CHICAGO CITY COUNCIL, JOURNAL OF PROCEEDINGS, May 6, 2015, at 108500 § 3; MCC § 9-100-050(a) (as amended May 6, 2015).

26.     On February 19, 2016, the Honorable Kathleen G. Kennedy issued an Opinion and Order in the *Simpson* case in which she held that the notice provisions of the MCC were mandatory and the City's failure to follow those provisions rendered its actions void. *See* February 19, 2016 Opinion and Order at 13-16, attached hereto as **Ex. B**. Plaintiffs thereafter adduced evidence in the *Simpson* litigation – including sworn testimony from the Managing Deputy Director of the City's Finance Department during a deposition on July 14, 2016 – confirming that for the duration of the class period the City failed to send the required notices and prematurely accelerated liability determinations and late penalties.

27.     Less than two months later, on Friday, September 9, 2016, Mayor Rahm Emanuel, through the City's Corporation Counsel, quietly proposed an ordinance under which *new* administrative procedures would be created to adjudicate the *same* alleged ASE and ATL violations that were the subject of the *Simpson* litigation and which would create "new and separate assessment[s] of liability" for those past alleged violations. The proposed ordinance was quietly placed on the following Monday's agenda before the City's Finance Committee, which

8

recommended its adoption. The Mayor signed the ordinance into law on September 21, 2016. *See* Automated Enforcement Ordinance (**Ex. A**).

28.     It is abundantly clear that the Ordinance was not passed to benefit the citizens of Chicago, but rather was a misguided and erroneous effort to make an end-run around the Court's finding in the *Simpson* litigation that the liability, fines and penalties assessed in connection with past ATL and ASE violations are illegal and void. Because the liability, fines and penalties for those prior ATL and ASE violations will, quite literally, be wiped off the books, the City is attempting to create "new and separate" liabilities for past, pre-Ordinance offenses for which new fines and penalties can be assessed. How, one might ask, can that occur in the United States of America? The answer is that it cannot.

29.     While the Mayor and the City Council are free to change their own local laws to their benefit and at the expense of Chicagoans – a practice which they have repeatedly and unabashedly engaged in since the filing of the *Simpson* suit – they are, thankfully, still bound by the laws of the State of Illinois and the Constitutions of the State of Illinois and United States of America. These laws, which the Mayor cannot simply change upon being caught breaking them, render the Automated Enforcement Ordinance illegal and unconstitutional.

**C.     The City exceeded its home rule authority in adopting the Automated Enforcement Ordinance because the Illinois Vehicle Code does not authorize the administrative adjudications created by the Ordinance.**

30.     The City exceeded its home rule authority in adopting the Automated Enforcement Ordinance because the Illinois Vehicle Code does not authorize the administrative adjudications created by the Ordinance. More specifically, the City's power to create procedures for adjudicating and enforcing the ATL and ASE programs stems exclusively from an authorizing act of the Illinois General Assembly. *See* 625 ILCS 5/11-207 ("[N]o local authority shall enact or enforce any

9

ordinance rule or regulation in conflict with the provisions of this Chapter unless expressly authorized herein."); 625 ILCS 5/11-208.1 ("The provisions of this Chapter of this Act … shall be applicable and uniformly applied and enforced throughout this State, in all other political subdivisions and in all units of local government."); 625 ILCS 5/11-208.2 ("The provisions of this Chapter of this Act limit the authority of home rule units to adopt local police regulations inconsistent herewith….").

31.     Therefore, the City has no legal power to create any procedure for adjudicating or enforcing alleged ATL or ASE violations that are inconsistent with or otherwise not authorized by Section 11-208.3, 11-208.6 and 11-208.8 of the Illinois Vehicle Code.

32.     While the Illinois Vehicle Code authorizes specified procedures for the administrative adjudication of alleged ATL and ASE violations, all of those procedures pertain to a single proceeding brought against an individual within a specified period of time. *See* 625 ILCS 5/11-208.3. Nowhere does the Illinois Vehicle Code authorize a municipality to commence multiple proceedings against an individual for the same offense. But that is exactly what the Automated Enforcement Ordinance purports to do.

33.     As noted above, the only administrative proceedings authorized by the Illinois Vehicle Code were already initiated years ago against every individual subject to the Automated Enforcement Ordinance, culminating in the issuance of determinations of liability and the termination of those proceedings. Despite the commencement and completion of the *only* administrative adjudications authorized under the Illinois Vehicle Code, the Automated Enforcement Ordinance purports to initiate subsequent administrative adjudications that are not authorized by the Illinois Vehicle Code.

10

34.     These subsequent years-after-the-fact proceedings are inconsistent with the Illinois

Vehicle Code and completely undermine its stated purpose of ensuring the "fair and efficient"

adjudication of ATL and ASE violation.  625 ILCS 5/11-208.3(a).  There is nothing fair nor

efficient in allowing the City to initiate a second proceeding against the same individuals for the

same offense years after they allegedly occurred.

35.     For these reasons, the City exceeded its home rule authority in adopting the

Automated Enforcement Ordinance and, therefore, it is illegal, unconstitutional and void *ab initio*.

*See, e.g., People ex rel. Ryan v. Vill. of Hanover Park*, 311 Ill. App. 3d 515, 528–29 (1st Dist.

1999) (holding that villages' alternative traffic programs were inconsistent with the Illinois

Vehicle Code and, therefore, invalid because even though "the ordinances track the language of

the Code *en haec verba* as it defines various offenses, they do not *enforce* those provisions as the

Code and attendant provisions contemplate.") (emphasis in original).

## D.     The Automated Enforcement Ordinance purports to authorize administrative adjudications of alleged ATL and ASE violations that occurred prior to its effective date in violation of the Illinois Vehicle Code.

36.     While the Illinois Vehicle Code grants the City the right to administratively

adjudicate ATL and ASE violations, it explicitly prohibits the administrative adjudication of such

offenses that occurred prior to the effective date of the ordinance authorizing such adjudications.

*See* 625 ILCS 5/11-208.3(a) ("The administrative system shall only have authority to adjudicate

civil offenses … that occur *after* the effective date of the ordinance adopting such a system under

this Section.") (emphasis added).

37.     In other words, the City lacks the power to enforce *prior* alleged violations via *new*

administrative adjudications established under the Automated Enforcement Ordinance. The City

may only adjudicate alleged violations pursuant to new ordinances *prospectively*.  And this time

11

the City cannot simply re-write the law to suit its purposes. Only the Illinois General Assembly may amend the Illinois Compiled Statutes.

38.     Because the Automated Enforcement Ordinance purports to authorize administrative adjudications of ATL and ASE violations that occurred prior to its effective date, it is illegal, unconstitutional and void *ab initio*.

**E.      The Automated Enforcement Ordinance purports to initiate administrate adjudications of alleged ATL and ASE violations more than 90 days after the alleged offense in violation of the Illinois Vehicle Code.**

39.     Every individual subject to the Automated Enforcement Ordinance was already subjected to prior administrative adjudications of their alleged ATL or ASE violations. Indeed, the Ordinance itself is limited to individuals "to whom a determination of liability for a violation of Section 9-101-020 or 9-102-20 of the Code was mailed between March 23, 2010 and May 14, 2015." Automated Enforcement Ordinance at Section III(a) (**Ex. A**). Those prior proceedings were terminated years ago. *See, e.g.,* 735 ILCS 5/3-101 ("'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, … which terminates the proceedings before the administrative agency."). Those prior proceedings were illegal and void due to the City's failure to follow the mandatory notice provisions of the MCC.

40.     The Automated Enforcement Ordinance, by its own terms, purports to authorize new administrative adjudications of alleged ATL and ASE violations that may result in new and separate assessments of liability, fines and penalties. *See* Automated Enforcement Ordinance at Section III (**Ex. A**).

41.     As noted above, such a system of administrative adjudication must comply with the requirements of the Illinois Vehicle Code. The notice provisions of the Automated Enforcement

12

Ordinance, however, are inconsistent with the limitations imposed by the Illinois Vehicle Code.

42. More specifically, the Automated Enforcement Ordinance provides that the notice initiating the administrative adjudications under the Ordinance be issued "within 14 months of the effective date of this ordinance" (*i.e.*, between September 21, 2016 and November 21, 2017). Automated Enforcement Ordinance at Section III(a) (**Ex. A**).

43. The Illinois Vehicle Code, on the other hand, requires that any notice initiating the administrative adjudication of alleged ATL or ASE violations be served "within 30 days after the Secretary of State or the lessor of the motor vehicle notifies the municipality or county of the identity of the owner or lessee of the vehicle, but not later than 90 days after the violation." 625 ILCS 5/11-208.3(b)(3); *see also* 625 ILCS 5/11-208.6(d) ("For each violation of a provision of this Code or a local ordinance recorded by an [ATL] enforcement system, the county or municipality having jurisdiction shall issue a written notice of the violation to the registered owner of the vehicle as the alleged violator. The notice shall be delivered to the registered owner of the vehicle, by mail, within 30 days after the Secretary of State notifies the municipality or county of the identity of the owner of the vehicle, but in no event later than 90 days after the violation."); 625 ILCS 5/11-208.8(e) ("For each violation of a provision of this Code or a local ordinance recorded by an [ASE] system, the municipality having jurisdiction shall issue a written notice of the violation to the registered owner of the vehicle as the alleged violator. The notice shall be delivered to the registered owner of the vehicle, by mail, within 30 days after the Secretary of State notifies the municipality of the identity of the owner of the vehicle, but in no event later than 90 days after the violation.").

44. Because, by its own terms, the Automated Enforcement Ordinance seeks to authorize the administrative adjudication of alleged ATL and ASE violations that occurred prior

13

to May 14, 2015, its notice provision – which provides for service of notice years after the alleged violation – fails to comply with the 90-day time limitation imposed by the Illinois Vehicle Code.

45.     In other words, the limitations imposed by the Illinois Vehicle Code were designed to ensure that the administrative adjudication of alleged ATL and ASE violations are conducted fairly and promptly, not years after the fact when memories have faded, access to evidence and witnesses are lost or more difficult to track down and citizens likely no longer even have any recollection of the alleged traffic offense.

46.     Indeed, the stated purpose of Section 11-208.3 is for the "fair and efficient enforcement of municipal or county regulations through the administrative adjudication of [ASE] or [ATL] law violations." 625 ILCS 5/11-208.3(a). Instituting administrative adjudications years after – and in some cases seven years after – an alleged traffic offense occurred is anything but "fair and efficient."

47.     Because the administrative adjudications authorized by the Automated Enforcement Ordinance are initiated by notices sent more than 90 days after the alleged ATL or ASE violation, it is illegal, unconstitutional and void *ab initio*.

## F.     The Automated Enforcement Ordinance violates the Illinois Vehicle Code by imposing late penalties contemporaneously with a determination of liability.

48.     Despite the fact that the Automated Enforcement Ordinance purports to establish "new and separate assessment[s] of liability" for prior alleged ATL and ASE violations, it automatically imposes late penalties on motorists contemporaneously with the new determination of liability in violation of the Illinois Vehicle Code.

49.     More specifically, the Illinois Vehicle Code provides that "[i]n all municipalities…, the automated speed enforcement system or automated traffic law ordinance shall require that no additional fee shall be charged to the alleged violator for exercising his or her right to an

14

administrative hearing, *and persons shall be given at least 25 days following an administrative hearing to pay any civil penalty* imposed by a finding that Section 11-208.6 [ATL], 11-208.8 [ASE], ... or a similar local ordinance has been violated." 625 ILCS 5/11-208.3(b)(3) (emphasis added); *see also* 625 ILCS 5/11-208.6(j) (limiting initial fine for ATL violations to $100 and providing that an additional $100 late payment penalty can only be assessed "for failure to pay the original penalty ... in a timely manner"); 625 ILCS 5/11-208.8(c)(1)-(2) (limiting initial fine for ASE violations to $50-$100 and providing that an additional $50-$100 late payment penalty can only be assessed "for failure to pay the original penalty in a timely manner").

50.     In other words, once a liability determination is administratively rendered, the Illinois Vehicle Code requires that motorist be given at least 25 days to pay the underlying fine.

51.     The Automated Enforcement Ordinance, however, directs that liability determination shall be entered not only in the amount of the applicable fine, but also for the "late payment penalty." *See* Automated Enforcement Ordinance at Section III(d)(d) (**Ex. A**) ("If upon conclusion of the hearing, the Administrative Law Officer finds that the Recipient is liable for the violation, the Administrative Law Officer shall enter an order confirming liability in the total amount of the earlier fine, *late payment penalty* and collection fee.... The confirmation shall be a new and separate assessment of liability....") (emphasis added); *see also id.* at Section III(f) ("If the Recipient fails to respond to the review notice, the Department shall mail a written notice to the Recipient confirming liability in the total amount of the earlier fine, *late payment penalty* and collection fee.... The confirmation shall be a new and separate assessment of liability....") (emphasis added).

52.     Thus, under the Automated Enforcement Ordinance, motorists are not "given at least 25 days following an administrative hearing to pay any civil penalty," but rather are charged

15

a late payment penalty (and collection costs) at the very same time they are purportedly found liable for the underlying fine. Because this violates Section 11-208.3(b)(3) of the Illinois Vehicle Code, the Automated Enforcement Ordinance is illegal, unconstitutional and void *ab initio*.

## G. The Automated Enforcement Ordinance violates the due process clause of the Illinois and United States Constitutions.

53. When the government deprives citizens of liberty or property, due process requires a hearing "at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972). The Supreme Court "has traditionally insisted that, whatever its form, opportunity for that hearing must be provided *before* the deprivation at issue takes effect." *Id.* (emphasis added). As the Supreme Court explained:

> If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. 'This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone.'

*Id.* at 81–82 (quoting *Stanley v. Illinois*, 405 U.S. 645, 647 (1972)); *see also U.S. v. Wilson*, 159 F.3d 280, 290 (7th Cir. 1998) ("[A] hearing at a 'meaningful time' generally means one held before someone is separated from their property....").

54. Here, the Automated Enforcement Ordinance purports to authorize the administrative adjudication of alleged ATL and ASE violations *after* the City had already assessed and collected the underlying fines and penalties. In fact, despite the fact that the Ordinance purports to establish "new and separate liability" for which a "new and separate" debt arises, the City has already collected this new and yet-to-be established debt *years prior* to the hearings authorized under the Ordinance to adjudicate these "new and separate" liabilities.

16

55.     In other words, the City wants to turn the Constitution on its head. The result of this Ordinance would be to take money now (*i.e.*, from 2010 to 2015) and determine liability much, *much* later (by authorizing hearings that take place in 2017 to adjudicate the propriety of taking that money years earlier). The due process clauses of the Illinois and United States Constitutions were designed to prevent precisely these kinds of results and the arbitrary governmental actions that bring them about.

56.     Furthermore, the unreasonable delay in providing a hearing in and of itself deprives citizens "of the fundamental fairness which due process requires." *Stull v. Dept of Children & Family Servs.*, 239 Ill. App. 3d 325, 335 (5th Dist. 1992) (holding that "nearly one year is an unreasonable length of time" in administrative expungement hearing and, therefore, the delay violated due process).

57.     Here, the Automated Enforcement Ordinance purports to authorize administrative hearings for alleged ATL and ASE violations that occurred, at a minimum, *two to seven years ago*. This multi-year delay in adjudicating ATL and ASE violations is unreasonable on its face.

58.     Moreover, it is absurdly out of proportion with the time limits established by the Illinois legislature for the "fair and efficient" adjudication of alleged ATL and ASE violations. 625 ILCS 5/11-208.3(a); *see also Lyon v. Dep't of Children & Family Servs.*, 209 Ill. 2d 264, 274 (2004) ("Violation of state requirements may not indicate a due process violation, and vice versa, but these requirements are a useful reference because they represent standards that the General Assembly ... concluded were sufficient.").

59.     As noted above, the Illinois Vehicle Code requires that any notice initiating the administrative adjudication of alleged ATL or ASE violations be served no later than 30 to 90 days after the alleged violation. *See* 625 ILCS 5/11-208.3(b)(3); 625 ILCS 5/11-208.6(d); 625 ILCS

17

5/11-208.8(e).

60.    The provision of the Automated Enforcement Ordinance authorizing notice to be served two to seven years after the alleged violation so grossly deviates from the time limitations set by the Illinois Legislature that it unquestionably violates due process. *See Weiner v. Illinois Dep't of Fin. & Prof'l Regulation*, 2012 IL App (1st) 110190-U, ¶ 30 ("When considering whether violation of a ... deadline violates due process, the deadline provides guidance for what is considered reasonable. '[A] gross deviation from [the] time limitations [set by the legislature] would be deemed to be unreasonable....'") (*quoting Stull*, 239 Ill. App. 3d at 334).

61.    Because the Automated Enforcement Ordinance purports to authorize administrative adjudications of liability for fines and penalties the City assessed and collected years ago, it violates the due process clause of the Illinois and United States Constitutions, rendering the Ordinance and its accompanying fines and penalties illegal, unconstitutional and void *ab initio*.

## H.    The Automated Enforcement Ordinance violates the equal protection clauses of the Illinois and United States Constitutions.

### a.    *Unequal penalty for same offense.*

62.    As noted above, the Automated Enforcement Ordinance imposes a late payment penalty at the very same time motorists are purportedly found liable for the underlying fine. In addition to violating the Illinois Vehicle Code, the Automated Enforcement Ordinance also impermissibly applies that late payment penalty differently to two groups of similarly situated motorists in violation of the equal protection clauses of the Illinois and United States Constitutions.

63.    More specifically, for individuals who already paid the fine and late payment penalty as part of the prior administrative adjudication of their alleged ATL or ASE violation, the Automated Enforcement Ordinance provides that those prior payments will be applied to satisfy

18

this new and separate debt. Thus, individuals who previously paid are penalized in the amount of both the fine and the late payment penalty.

64.     Individuals who did not previously pay either the fine or the late penalty payment penalty are excused under the Automated Enforcement Ordinance from paying a late payment penalty. *See* Automated Enforcement Ordinance at Section IV(b) (**Ex. A**) (authorizing waiver of late payment penalty to individuals who did not previously pay fine or late penalty if fine is paid within 30 days); *id.* at Section IV(b) (automatically waiving late payment penalty for individuals whose previously never paid the late payment penalty). Thus, individuals who previously did not pay are penalized only in the amount of the fine, not the late payment penalty.

65.     The equal protection clauses of the Illinois and United States Constitutions, however, require persons who are similarly situated be treated equally. In fact, it is well-settled that unequal penalties for the same or similar offense violates equal protection. *See People v. Lovett*, 234 Ill. App. 3d 645, 646 (3rd Dist. 1992) ("The [equal protection] clause ... comes into play when the law punishes unequally persons who have committed the same quality of offense."); *People v. Shepard*, 193 Ill. App. 3d 910, 917 (4th Dist. 1990) (same).

66.     Here, all motorists subject to the Automated Enforcement Ordinance are similarly situated in that they are all accused of violating the City's ATL or ASE laws. Yet, the City unequally penalizes two groups of similarly situated motorists accused of committing the exact same offenses based solely on whether or not they previously paid the fines and/or late payment penalties associated with the prior administrative adjudication of these alleged offenses.

67.     For example, if Motorist A is purportedly found liable for an ATL violation under the Automated Enforcement Ordinance and previously paid the fine and late penalty associated with this alleged offense, then she is penalized not only $100 for the fine, but also an additional

19

$100 for the late payment penalty. Motorist A, therefore, is penalized a total of $200 for her alleged ATL offense. If Motorist B, on the other hand, is purportedly found liable for an ATL violation under the Automated Enforcement Ordinance and had not previously paid the fine and late penalty associated with this alleged offense, then she is penalized only $100 for the fine. Motorist B, therefore, is penalized half as much as Motorist A for the exact same offense.

68.     Since the claimed purpose of the Automated Enforcement Ordinance is to provide motorists an opportunity to administratively challenge their alleged ATL and ASE violations – and is purportedly not just another money grab by the City – distinguishing between motorists who previously paid and those who did not for purposes of establishing the amount of the penalty in no way advances this claimed goal. Accordingly, the unequal penalty authorized by the Automated Enforcement Ordinance for the same offense violates the equal protection clauses of the Illinois and United States Constitutions, rendering the Ordinance and its accompanying fines and penalties illegal, unconstitutional and void *ab initio*.

### b.     Unequal treatment of pre-March 23, 2010 motorists.

69.     It is clear that the real purpose of the Automated Enforcement Ordinance was not to benefit the motorists previously accused of ATL and ASE violations, but rather is a misguided and erroneous effort by the Mayor and the City to interfere with the ongoing judicial proceeding in the *Simpson* case. Indeed, based on the rulings rendered in the *Simpson* case thus far, it is inevitable that the ATL and ASE fines and penalties at issue in that suit will be rendered illegal and void. Liability for those alleged ATL and ASE violations, therefore, will be wiped off the books. Thus, rather than affording class members "a second bite at the apple" to contest their alleged ATL and ASE violations, the true purpose of the Automated Enforcement Ordinance was to give the City a second bite at an illegal money grab by purporting to allow it to re-adjudicate

20

liability for ATL and ASE violations that, in effect, they already lost.

70.     But even taking the stated purpose of the Ordinance as true, it contains yet another fatal flaw. If, as the Ordinance asserts, it was intended to give individuals who did not receive a second notice an opportunity to administratively challenge their alleged ATL and ASE violations, then, logically, it would apply to all individuals who did not receive a second notice. But it does not. The Ordinance, again, makes a distinction between two groups of similarly situated motorists accused to the same offenses for reasons that in no way further the stated purpose of the Ordinance.

71.     As noted above, and as recited in the Whereas clause of the Ordinance, the ATL program was first initiated in 2003 (July 9, 2003 to be exact). Also, as noted above, and as confirmed in the Whereas clause of the Ordinance, the City failed to follow the proper mandatory notice provisions since the inception of the program in 2003.

72.     The Automated Enforcement Ordinance, however, only applies to individuals who were mailed determinations of liability for alleged ATL or ASE violations between March 23, 2010 and May 14, 2015. *See* Automated Enforcement Ordinance at Section III(a) (**Ex. A**). Motorists issued liability determinations from July 9, 2003 to March 22, 2010 get nothing, despite the fact that they – like the group covered by the Ordinance – also did not receive a second notice.

73.     Of course, the March 23, 2010 date is no coincidence – it is five years to the date before the *Simpson* suit was filed. The City has repeatedly argued that its liability in the *Simpson* lawsuit should be limited by a five-year statute of limitation, *i.e.* that it is liable only to motorists accused of violations that occurred on March 23, 2010 or later.[1]

_____

[1] While not necessarily relevant here, the City's statute of limitations argument is wrong because when, like in *Simpson*, a municipal action is void "it is subject to attack *at any time* in any court, either directly or collaterally." *Daniels v. Indus. Comm'n*, 201 Ill. 2d 160, 166 (2002), *as modified on denial of reh'g* (Aug. 29, 2002) (emphasis added).

21

74. The Automated Enforcement Ordinance, then, is no high-minded attempt to make up for what the City owes to its citizens. Instead, it is a naked effort by the City to influence the *Simpson* litigation, as misguided and erroneous as those efforts may be.

75. Despite this obvious purpose, the Ordinance nonetheless insists in its Whereas clauses that its purpose is to provide individuals who did not receive a second notice an opportunity to administratively challenge their alleged ATL and ASE violations. Because the Automated Enforcement Ordinance provides unequal treatment to individuals who were mailed determinations of liability prior March 22, 2010 and because this distinction in no way furthers the stated purpose of the Ordinance, it violates the equal protection clauses of the Illinois and United States Constitutions, rendering the Ordinance and its accompanying fines and penalties illegal, unconstitutional and void *ab initio*.

## CLASS ACTION ALLEGATIONS

76. Plaintiffs bring Counts I-VI of this action pursuant to 735 ILCS 5/2-801 of the Illinois Code of Civil Procedure on behalf of a class of similarly situated individuals defined as follows:

All individuals or entities to whom a determination of liability for an alleged violation of 9-101-020 or 9-102-020 of the Municipal Code of Chicago was mailed between March 23, 2010 and May 14, 2015 who did not (i) request or receive a hearing on the violation; or (ii) pay the fine for the violation on or prior to the date the determination of liability was mailed; and as to whom liability for the violation has not been released, set aside or extinguished (the "Class").

77. Plaintiff Lieschke brings Counts VII of this action pursuant to 735 ILCS 5/2-801 of the Illinois Code of Civil Procedure on behalf of a class of similarly situated individuals defined as follows:

All individuals or entities to whom a determination of liability for an alleged violation 9-102-020 of the Municipal Code of Chicago was mailed prior to March 23, 2010 who did not (i) request or receive a hearing on the violation; or (ii) pay

22

the fine for the violation on or prior to the date the determination of liability was mailed; and as to whom liability for the violation has not been released, set aside or extinguished (the "Pre-March 23, 2010 Class").

78.     The members of the classes are so numerous that joinder of all members is impracticable. Based on investigation by Plaintiffs' counsel, public statements made by the City's Corporation Counsel and publicly available information on the volume of alleged ATL and ASE violations issued by the City, it is estimated that the Class will comprise in excess of one million members. The Pre-March 23, 2010 Class is similarly likely to comprise hundreds of thousands of members. The exact number of members in each class can be determined from records maintained by the City.

79.     Common questions of law and fact exist as to the Class, including, but not limited to:

    a.  Whether the Illinois Vehicle Code authorizes the administrative adjudications created by the Automated Enforcement Ordinance;

    b.  Whether the Automated Enforcement Ordinance is illegal and unconstitutional because it purports to authorize the administrative adjudication of alleged ATL and ASE offenses that occurred prior to its effective date in violation of 625 ILCS 5/11-208.3(a);

    c.  Whether the Automated Enforcement Ordinance is illegal and unconstitutional because the notice initiating the administrative adjudication of alleged ATL or ASE offenses under the Ordinance is to be served more than 90 days after the alleged offense in violation 625 ILCS 5/11-208.3(b)(3), 625 ILCS 5/11-208.6(d) and 625 ILCS 5/11-208.8(e);

    d.  Whether the Automated Enforcement Ordinance is illegal and unconstitutional because it provides that late payment penalties be assessed contemporaneously with the determination of liability in violation of 625 ILCS 5/11-208.3(b)(3);

    e.  Whether the Automated Enforcement Ordinance violates due process by purporting to authorize administrative adjudications of liability for fines and penalties the City already collected years ago; and

    f.  Whether the Automated Enforcement Ordinance violates equal protection by providing an unequal penalty for the same offense for motorist who previously paid

23

> fines and penalties in connection with alleged ATL and ASE violations compared to those who had not previously paid;

80. Common questions of law and fact exist as to the Pre-March 23, 2010 Class, including, but not limited to whether the Automated Enforcement Ordinance violates equal protection by failing to provide equal treatment to similarly situated motorists who were mailed determinations of liability prior March 23, 2010.

81. These common questions predominate over questions, if any, affecting solely individual class members.

82. Plaintiffs will fairly and adequately protect the interests of class members. Plaintiffs have retained competent counsel experienced in class action litigation in state and federal courts nationwide and Plaintiffs have no interest adverse to any class members. Plaintiffs intend to prosecute this case vigorously on behalf of themselves and the class members.

83. A class action is an appropriate method for the fair and efficient adjudication of this controversy pursuant to 735 ILCS 5/2-801(4) because it involves the legality and constitutionality of an Ordinance applicable to Plaintiffs and all class members. A class action can therefore best secure the economies of time, effort and expense or accomplish the other ends of equity and justice that this action seeks to obtain.

## COUNT I
### DECLARATORY, INJUNCTIVE AND OTHER RELIEF
**(Violation of Home Rule Authority)**

84. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

85. Pursuant to 735 ILCS 5/2-701(a), this Court may "make binding declarations of rights, having the force of final judgments ... including the determination ... of the construction of any statute, municipal ordinance, or other governmental regulation ... and a declaration of the

24

rights of the parties interested." Such a declaration of rights "may be obtained ... as incident to or part of a complaint ... seeking other relief as well." 735 ILCS 5/2-701(b).

86.     Plaintiffs seek a judgment declaring that the Automated Enforcement Ordinance is unconstitutional because it exceeds the City's home rule authority as specifically limited by the Illinois Vehicle Code.

87.     Plaintiffs have a personal claim which is capable of being affected and are entitled to the requested declaratory relief. As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

88.     Plaintiffs possess a clearly ascertainable right to be free from the unconstitutional actions set forth above and are currently in need of protection. As detailed above, Plaintiffs have raised a fair question concerning the existence of this right.

89.     For the reasons set forth above, Plaintiffs have a likelihood of success on the merits.

90.     Plaintiffs and class members will suffer irreparable harm if an injunction is not granted. The initiations of administrative adjudications, the collection of fines and penalties related thereto and the threat of vehicle seizure, driver's license revocations and other such actions will cause substantial, immediate and continuing damage to Plaintiffs and class members. As a result, Plaintiffs and class members may suffer irreversible damage to their credit from threatened collection actions by the City and the possible reporting of non-payment to credit agencies, be subject to vehicle seizure and/or driver's license revocation and suffer other harm and inconveniences as a result of the City's implementation and enforcement of the unconstitutional Ordinance. There is no adequate remedy at law available to Plaintiffs and class members that would protect against the above harms.

91. To the extent the City has assessed any fines, penalties or other amounts pursuant to the Automated Enforcement Ordinance, all such fines, penalties or other amounts should be declared illegal and void. To the extent the City has collected any such fines, penalties or other amounts (or applied previously collected such fines, penalties or other amounts) it should be required to refund them.

**WHEREFORE**, Plaintiffs pray that the Court:

A. Declare that the Automated Enforcement Ordinance is unconstitutional and void;

B. Grant preliminary and permanent injunctive relief prohibiting the City from implementing and enforcing the Automated Enforcement Ordinance;

C. Declare that any fines, penalties or other amounts assessed by the City pursuant to the Automated Enforcement Ordinance are illegal and void;

D. Order the City to refund any and all amounts collected or applied pursuant to the Automated Enforcement Ordinance, including pre- and post-judgment interest;

E. Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F. Order such other and further relief as this Court deems equitable, just and proper.

## COUNT II
### DECLARATORY, INJUNCTIVE AND OTHER RELIEF
### (Violation of Prohibition on Adjudication of Offenses Prior to Effective Date of Ordinance, 625 ILCS 5/11-208.3(a))

92. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

93. Pursuant to 735 ILCS 5/2-701(a), this Court may "make binding declarations of rights, having the force of final judgments … including the determination … of the construction of any statute, municipal ordinance, or other governmental regulation … and a declaration of the

26

rights of the parties interested." Such a declaration of rights "may be obtained ... as incident to or part of a complaint ... seeking other relief as well." 735 ILCS 5/2-701(b).

94.     Plaintiffs seek a judgment declaring that the Automated Enforcement Ordinance is illegal and unconstitutional because it purports to authorize the administrative adjudication of alleged ATL and ASE offenses that occurred prior to its effective date in violation of 625 ILCS 5/11-208.3(a).

95.     Plaintiffs have a personal claim which is capable of being affected and are entitled to the requested declaratory relief. As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

96.     Plaintiffs possess a clearly ascertainable right to be free from the unconstitutional actions set forth above and are currently in need of protection. As detailed above, Plaintiffs have raised a fair question concerning the existence of this right.

97.     For the reasons set forth above, Plaintiffs have a likelihood of success on the merits.

98.     Plaintiffs and class members will suffer irreparable harm if an injunction is not granted. The initiations of administrative adjudications, the collection of fines and penalties related thereto and the threat of vehicle seizure, driver's license revocations and other such actions will cause substantial, immediate and continuing damage to Plaintiffs and class members. As a result, Plaintiffs and class members may suffer irreversible damage to their credit from threatened collection actions by the City and the possible reporting of non-payment to credit agencies, be subject to vehicle seizure and/or driver's license revocation and suffer other harm and inconveniences as a result of the City's implementation and enforcement of the illegal and unconstitutional Ordinance. There is no adequate remedy at law available to Plaintiffs and class members that would protect against the above harms.

27

99.     To the extent the City has assessed any fines, penalties or other amounts pursuant to the Automated Enforcement Ordinance, all such fines, penalties or other amounts should be declared illegal and void. To the extent the City has collected any such fines, penalties or other amounts (or applied previously collected such fines, penalties or other amounts) it should be required to refund them.

**WHEREFORE**, Plaintiffs pray that the Court:

A.      Declare that the Automated Enforcement Ordinance is illegal, unconstitutional and void;

B.      Grant preliminary and permanent injunctive relief prohibiting the City from implementing and enforcing the Automated Enforcement Ordinance;

C.      Declare that any fines, penalties or other amounts assessed by the City pursuant to the Automated Enforcement Ordinance are illegal and void;

D.      Order the City to refund any and all amounts collected or applied pursuant to the Automated Enforcement Ordinance, including pre- and post-judgment interest;

E.      Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F.      Order such other and further relief as this Court deems equitable, just and proper.

## COUNT III
### DECLARATORY, INJUNCTIVE AND OTHER RELIEF
### (Violation of 90-Day Notice Provision, 625 ILCS 5/11-208.3(b)(3), 625 ILCS 5/11-208.6(d) and 625 ILCS 5/11-208.8(e))

100.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

101.    Pursuant to 735 ILCS 5/2-701(a), this Court may "make binding declarations of rights, having the force of final judgments ... including the determination ... of the construction

28

of any statute, municipal ordinance, or other governmental regulation ... and a declaration of the rights of the parties interested." Such a declaration of rights "may be obtained ... as incident to or part of a complaint ... seeking other relief as well." 735 ILCS 5/2-701(b).

102. Plaintiffs seek a judgment declaring that the Automated Enforcement Ordinance is illegal and unconstitutional because the notice initiating the administrative adjudication of alleged ATL or ASE offenses under the Ordinance is to be served more than 90 days after the alleged offense in violation 625 ILCS 5/11-208.3(b)(3), 625 ILCS 5/11-208.6(d) and 625 ILCS 5/11-208.8(e).

103. Plaintiffs have a personal claim which is capable of being affected and are entitled to the requested declaratory relief. As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

104. Plaintiffs possess a clearly ascertainable right to be free from the unconstitutional actions set forth above and are currently in need of protection. As detailed above, Plaintiffs have raised a fair question concerning the existence of this right.

105. For the reasons set forth above, Plaintiffs have a likelihood of success on the merits.

106. Plaintiffs and class members will suffer irreparable harm if an injunction is not granted. The initiations of administrative adjudications, the collection of fines and penalties related thereto and the threat of vehicle seizure, driver's license revocations and other such actions will cause substantial, immediate and continuing damage to Plaintiffs and class members. As a result, Plaintiffs and class members may suffer irreversible damage to their credit from threatened collection actions by the City and the possible reporting of non-payment to credit agencies, be subject to vehicle seizure and/or driver's license revocation and suffer other harm and inconveniences as a result of the City's implementation and enforcement of the illegal and

29

unconstitutional Ordinance. There is no adequate remedy at law available to Plaintiffs and class members that would protect against the above harms.

107. To the extent the City has assessed any fines, penalties or other amounts pursuant to the Automated Enforcement Ordinance, all such fines, penalties or other amounts should be declared illegal and void. To the extent the City has collected any such fines, penalties or other amounts (or applied previously collected such fines, penalties or other amounts) it should be required to refund them.

**WHEREFORE**, Plaintiffs pray that the Court:

A. Declare that the Automated Enforcement Ordinance is illegal, unconstitutional and void;

B. Grant preliminary and permanent injunctive relief prohibiting the City from implementing and enforcing the Automated Enforcement Ordinance;

C. Declare that any fines, penalties or other amounts assessed by the City pursuant to the Automated Enforcement Ordinance are illegal and void;

D. Order the City to refund any and all amounts collected or applied pursuant to the Automated Enforcement Ordinance, including pre- and post-judgment interest;

E. Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F. Order such other and further relief as this Court deems equitable, just and proper.

## COUNT IV
### DECLARATORY, INJUNCTIVE AND OTHER RELIEF
**(Illegal Assessment of Late Payment Penalty Contemporaneously with the Determination of Liability, 625 ILCS 5/11-208.3(b)(3))**

108. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

30

109.     Pursuant to 735 ILCS 5/2-701(a), this Court may "make binding declarations of rights, having the force of final judgments ... including the determination ... of the construction of any statute, municipal ordinance, or other governmental regulation ... and a declaration of the rights of the parties interested." Such a declaration of rights "may be obtained ... as incident to or part of a complaint ... seeking other relief as well." 735 ILCS 5/2-701(b).

110.     Plaintiffs seek a judgment declaring that the Automated Enforcement Ordinance is illegal and unconstitutional because it provides that late payment penalties be assessed contemporaneously with the determination of liability in violation of 625 ILCS 5/11-208.3(b)(3).

111.     Plaintiffs have a personal claim which is capable of being affected and are entitled to the requested declaratory relief.  As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

112.     Plaintiffs possess a clearly ascertainable right to be free from the unconstitutional actions set forth above and are currently in need of protection.  As detailed above, Plaintiffs have raised a fair question concerning the existence of this right.

113.     For the reasons set forth above, Plaintiffs have a likelihood of success on the merits.

114.     Plaintiffs and class members will suffer irreparable harm if an injunction is not granted.  The initiations of administrative adjudications, the collection of fines and penalties related thereto and the threat of vehicle seizure, driver's license revocations and other such actions will cause substantial, immediate and continuing damage to Plaintiffs and class members.  As a result, Plaintiffs and class members may suffer irreversible damage to their credit from threatened collection actions by the City and the possible reporting of non-payment to credit agencies, be subject to vehicle seizure and/or driver's license revocation and suffer other harm and inconveniences as a result of the City's implementation and enforcement of the illegal and

31

unconstitutional Ordinance. There is no adequate remedy at law available to Plaintiffs and class members that would protect against the above harms.

115. To the extent the City has assessed any fines, penalties or other amounts pursuant to the Automated Enforcement Ordinance, all such fines, penalties or other amounts should be declared illegal and void. To the extent the City has collected any such fines, penalties or other amounts (or applied previously collected such fines, penalties or other amounts) it should be required to refund them.

**WHEREFORE**, Plaintiffs pray that the Court:

A.  Declare that the Automated Enforcement Ordinance is illegal, unconstitutional and void;

B.  Grant preliminary and permanent injunctive relief prohibiting the City from implementing and enforcing the Automated Enforcement Ordinance;

C.  Declare that any fines, penalties or other amounts assessed by the City pursuant to the Automated Enforcement Ordinance are illegal and void;

D.  Order the City to refund any and all amounts collected or applied pursuant to the Automated Enforcement Ordinance, including pre- and post-judgment interest;

E.  Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F.  Order such other and further relief as this Court deems equitable, just and proper.

## COUNT V
### DECLARATORY, INJUNCTIVE AND OTHER RELIEF
### (Violation of Due Process)

116. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

32

117. Pursuant to 735 ILCS 5/2-701(a), this Court may "make binding declarations of rights, having the force of final judgments ... including the determination ... of the construction of any statute, municipal ordinance, or other governmental regulation ... and a declaration of the rights of the parties interested." Such a declaration of rights "may be obtained ... as incident to or part of a complaint ... seeking other relief as well." 735 ILCS 5/2-701(b).

118. Plaintiffs seek a judgment declaring that the Automated Enforcement Ordinance violates the due process clauses of the Illinois and United States Constitutions by purporting to authorize administrative adjudications of liability for fines and penalties the City already assessed and collected and/or due to the multiple-year delay between the alleged offense and the initiation of the administrative adjudications under the Ordinance.

119. Plaintiffs have a personal claim which is capable of being affected and are entitled to the requested declaratory relief. As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

120. Plaintiffs possess a clearly ascertainable right to be free from the unconstitutional actions set forth above and are currently in need of protection. As detailed above, Plaintiffs have raised a fair question concerning the existence of this right.

121. For the reasons set forth above, Plaintiffs have a likelihood of success on the merits.

122. Plaintiffs and class members will suffer irreparable harm if an injunction is not granted. The initiations of administrative adjudications, the collection of fines and penalties related thereto and the threat of vehicle seizure, driver's license revocations and other such actions will cause substantial, immediate and continuing damage to Plaintiffs and class members. As a result, Plaintiffs and class members may suffer irreversible damage to their credit from threatened collection actions by the City and the possible reporting of non-payment to credit agencies, be

33

subject to vehicle seizure and/or driver's license revocation and suffer other harm and inconveniences as a result of the City's implementation and enforcement of the illegal and unconstitutional Ordinance. There is no adequate remedy at law available to Plaintiffs and class members that would protect against the above harms.

123. To the extent the City has assessed any fines, penalties or other amounts pursuant to the Automated Enforcement Ordinance, all such fines, penalties or other amounts should be declared illegal and void. To the extent the City has collected any such fines, penalties or other amounts (or applied previously collected such fines, penalties or other amounts) it should be required to refund them.

**WHEREFORE**, Plaintiffs pray that the Court:

A. Declare that the Automated Enforcement Ordinance violates due process and, therefore, is unconstitutional and void;

B. Grant preliminary and permanent injunctive relief prohibiting the City from implementing and enforcing the Automated Enforcement Ordinance;

C. Declare that any fines, penalties or other amounts assessed by the City pursuant to the Automated Enforcement Ordinance are illegal and void;

D. Order the City to refund any and all amounts collected or applied pursuant to the Automated Enforcement Ordinance, including pre- and post-judgment interest;

E. Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F. Order such other and further relief as this Court deems equitable, just and proper.

34

## COUNT VI
### DECLARATORY, INJUNCTIVE AND OTHER RELIEF
### (Violation of the Equal Protection – Unequal Penalty for Same Offense)

124. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

125. Pursuant to 735 ILCS 5/2-701(a), this Court may "make binding declarations of rights, having the force of final judgments ... including the determination ... of the construction of any statute, municipal ordinance, or other governmental regulation ... and a declaration of the rights of the parties interested." Such a declaration of rights "may be obtained ... as incident to or part of a complaint ... seeking other relief as well." 735 ILCS 5/2-701(b).

126. Plaintiffs seek a judgment declaring that the Automated Enforcement Ordinance violates the equal protection clauses of the Illinois and United States Constitutions by providing an unequal penalty for the same offense for motorists who previously paid fines and penalties in connection with alleged ATL and ASE violations compared to those who had not previously paid.

127. Plaintiffs have a personal claim which is capable of being affected and are entitled to the requested declaratory relief. As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

128. Plaintiffs possess a clearly ascertainable right to be free from the unconstitutional actions set forth above and are currently in need of protection. As detailed above, Plaintiffs have raised a fair question concerning the existence of this right.

129. For the reasons set forth above, Plaintiffs have a likelihood of success on the merits.

130. Plaintiffs and class members will suffer irreparable harm if an injunction is not granted. The initiations of administrative adjudications, the collection of fines and penalties related thereto and the threat of vehicle seizure, driver's license revocations and other such actions

35

will cause substantial, immediate and continuing damage to Plaintiffs and class members. As a result, Plaintiffs and class members may suffer irreversible damage to their credit from threatened collection actions by the City and the possible reporting of non-payment to credit agencies, be subject to vehicle seizure and/or driver's license revocation and suffer other harm and inconveniences as a result of the City's implementation and enforcement of the illegal and unconstitutional Ordinance. There is no adequate remedy at law available to Plaintiffs and class members that would protect against the above harms.

131.    To the extent the City has assessed any fines, penalties or other amounts pursuant to the Automated Enforcement Ordinance, all such fines, penalties or other amounts should be declared illegal and void. To the extent the City has collected any such fines, penalties or other amounts (or applied previously collected such fines, penalties or other amounts) it should be required to refund them.

**WHEREFORE**, Plaintiffs pray that the Court:

A.    Declare that the Automated Enforcement Ordinance violates the equal protection clauses of the Illinois and United States Constitutions and, therefore, is unconstitutional and void;

B.    Grant preliminary and permanent injunctive relief prohibiting the City from implementing and enforcing the Automated Enforcement Ordinance;

C.    Declare that any fines, penalties or other amounts assessed by the City pursuant to the Automated Enforcement Ordinance are illegal and void;

D.    Order the City to refund any and all amounts collected or applied pursuant to the Automated Enforcement Ordinance, including pre- and post-judgment interest;

E.   Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F.   Order such other and further relief as this Court deems equitable, just and proper.

## COUNT VII
### DECLARATORY, INJUNCTIVE AND OTHER RELIEF
### (Violation of Equal Protection– Unequal Treatment
### of Pre- and Post-March 23, 2010 Alleged Offenses)

132.   Plaintiff Lieschke adopts and incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

133.   Pursuant to 735 ILCS 5/2-701(a), this Court may "make binding declarations of rights, having the force of final judgments ... including the determination ... of the construction of any statute, municipal ordinance, or other governmental regulation ... and a declaration of the rights of the parties interested." Such a declaration of rights "may be obtained ... as incident to or part of a complaint ... seeking other relief as well." 735 ILCS 5/2-701(b).

134.   Plaintiff Lieschke seeks a judgment declaring that the Automated Enforcement Ordinance violates the equal protection clauses of the Illinois and United States Constitutions by failing to provide equal treatment to similarly situated individuals who were mailed determinations of liability prior to March 23, 2010.

135.   Plaintiff Lieschke has a personal claim which is capable of being affected and are entitled to the requested declaratory relief. As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

136.   Plaintiff Lieschke possesses a clearly ascertainable right to be free from the unconstitutional actions set forth above and are currently in need of protection. As detailed above, Plaintiff Lieschke has raised a fair question concerning the existence of this right.

137.    For the reasons set forth above, Plaintiff Lieschke has a likelihood of success on the merits.

138.    Plaintiffs and class members will suffer irreparable harm if an injunction is not granted.

139.    To the extent the City has assessed, applied or collected any fines, penalties or other amounts pursuant to the Automated Enforcement Ordinance, Plaintiffs reserve the right to amend this Count to seek a refund of all such amounts on behalf of themselves and the Class as defined above.

**WHEREFORE**, Plaintiff Lieschke prays that the Court:

A.    Declare that the Automated Enforcement Ordinance violates equal protection and, therefore, is unconstitutional and void;

B.    Grant preliminary and permanent injunctive relief prohibiting the City from implementing and enforcing the Automated Enforcement Ordinance;

C.    Declare that any fines, penalties or other amounts assessed by the City pursuant to the Automated Enforcement Ordinance are illegal and void;

D.    Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

E.    Order such other and further relief as this Court deems equitable, just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues that may be tried and decided by jury.

Dated: November 1, 2016                    Respectfully submitted,

By: _____
One of Plaintiffs' Attorneys

38

Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin Swetland
bswetland@cherry-law.com
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
(312) 372-2100
Firm No. 39807

Antonio M. Romanucci
aromanucci@rblaw.net
Rebecca Neubauer
rneubauer@rblaw.net
ROMANUCCI & BLANDIN, LLC
321 North Clark Street, Suite 900
Chicago, Illinois 60654
(312) 458-1000
Firm No. 35875

*Attorneys for Plaintiffs and the Class*

STATE OF ILLINOIS )
                  )SS.
COUNTY OF COOK )

I, SUSANA A. MENDOZA, City Clerk of the City of Chicago in the County of Cook and State of Illinois, DO HEREBY CERTIFY that the annexed and foregoing is a true and correct copy of that certain ordinance now on file in my office authorizing City of Chicago Automated Enforcement Violation Review and Refund Ordinance 2016.

I DO FURTHER CERTIFY that the said ordinance was passed by the City Council of the said City of Chicago on the fourteenth (14th) day of September, 2016.

I DO FURTHER CERTIFY that the said ordinance was delivered to the Mayor of the said City of Chicago after the passage thereof by the said City Council, without delay, by the City Clerk of the said City of Chicago, and that the said Mayor did approve and sign said ordinance on the twenty-first (21st) day of September, 2016.

I DO FURTHER CERTIFY that the original, of which the foregoing is a true copy, is entrusted to my care for safekeeping, and that I am the lawful keeper of the same.

> IN WITNESS WHEREOF, I have hereunto set my hand and affixed the corporate seal of the City of Chicago aforesaid, at the said City, in the County and State aforesaid, this twenty-first (21st) day of September, 2016.

[T.P.]

SUSANA A. MENDOZA, City Clerk

## O R D I N A N C E

**WHEREAS,** Since 2003, Chapter 9-102 of the Municipal Code of Chicago has empowered the City to impose fines and late payment penalties for automated traffic law enforcement system violations; and

**WHEREAS,** Since 2012, Chapter 9-101 of the Municipal Code of Chicago has empowered the City to impose fines and late payment penalties for automated speed enforcement system violations; and

**WHEREAS,** The Municipal Code provided that an initial notice of violation would be sent to persons whose vehicles were detected committing an automated traffic law enforcement system violation or an automated speed enforcement system violation; and

**WHEREAS,** The initial notice of violation indicated that the recipient could request a hearing to contest the violation, that a failure to pay or contest the violation would result in a determination being entered against the recipient, that a failure to pay the fine in time would result in a late payment penalty being assessed in an amount up to the fine, and that any unpaid fine or penalty would constitute a debt due and owing to the City; and

**WHEREAS,** Prior to May 6, 2015, the Municipal Code of Chicago provided that a second notice of violation would be sent to the recipient if no response was made to first notice, although the Illinois Vehicle Code does not require the issuance of second notices in connection with these types of violations; and

**WHEREAS,** The Department did not issue second notices in connection with automated traffic law enforcement system violations or automated speed enforcement system violations; and

**WHEREAS,** Consistent with the Municipal Code of Chicago's earlier provision for a second notice of violation to be sent, the City should now send a review notice to persons who received but did not respond to an initial notice of violation; and

**WHEREAS,** Such additional notice should reiterate the recipient's ability to contest liability for the violation by seeking review before an administrative law officer, while also allowing any fines or late payment penalties previously assessed against, or paid by, the recipient to be confirmed if the recipient chooses not to contest his or her liability, or does not prevail before an administrative hearing officer; and

**WHEREAS,** As of July 1, 2012, the Municipal Code of Chicago was amended to provide the recipient of a determination of liability for an automated traffic law enforcement system violation or an automated speed enforcement system violation twenty-five days to pay before a late payment penalty could be imposed; and

**WHEREAS,** After July 1, 2012, the Department, in some cases, continued to impose a late payment penalty after 21 days, based on the prior Code; and

**WHEREAS,** Those persons against whom a late payment penalty was imposed after 21 days and who paid the penalty before the expiration of 25 days should be afforded the opportunity to seek a refund of that penalty; now, therefore,

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF CHICAGO:

SECTION I. *Title and recitals.* This ordinance shall be known and may be cited as the "City of Chicago Automated Enforcement Violation Review and Refund Ordinance of 2016."

The recitals to this Ordinance are incorporated herein.

SECTION II. *Definitions.* For purposes of this Ordinance, the following definitions shall apply:

"Administrative Law Officer" means an administrative law officer appointed by the City's Department of Administrative Hearings to conduct a hearing on an automated traffic law enforcement system or automated speed enforcement system violation pursuant to Chapters 2-14 and 9-100 of the Code.

"City" means the City of Chicago.

"Code" Means the Municipal Code of Chicago as amended from time to time.

"Comptroller" means the Comptroller of the City.

"Department" means the Department of Finance of the City.

"Eligible Debtor" means any person who owes debt to the City as the result of a confirmation of liability order or notice issued by an Administrative Law Officer or the Department, respectively, in accordance with Section III of this Ordinance.

"Person" means any natural individual, firm, trust, partnership, association, joint venture, corporation or other legal entity, in his or its own capacity or as administrator, conservator, guardian, executor, trustee, receiver or other representative appointed by the court.

"Recipient" means a recipient of a review notice issued pursuant to this Ordinance.

SECTION III.
(a)     *Review notice.* The Department is hereby authorized to, and shall, issue a review notice to any person to whom a determination of liability for a violation of section 9-101-020 or 9-102-020 of the Code was mailed between March 23, 2010 and May 14, 2015, who did not: (i) request or receive a hearing on the violation; or (ii) pay the fine for the violation on or prior to the date the determination of liability was mailed; and as to whom liability for the violation has not been released, set aside, or extinguished. The review notice shall include:

> (1) the date and location of the violation;
> (2) the license plate number of the vehicle involved in the violation;
> (3) the Code provision violated;
> (4) the applicable fine;
> (5) a reference to the prior notice that was mailed to the Recipient;
> (6) the total amount of previously paid fine, penalty and collection fee for the violation, if any;
> (7) information about how to view photos and/or video of the violation online; and

(8) information about how to contest the underlying violation.

A review notice may include the above information for more than one determination of liability issued to the same person. The Department shall issue all review notices within 14 months of the effective date of this ordinance.

(b)     *Method of delivery.*  The review notice shall be mailed to the person named in the determination of liability by first class mail, postage prepaid. The review notice shall be mailed to the address to which the determination of liability was issued or to the most current address of the person named in the determination of liability as determined by the Department.

(c)     *Opportunity to contest.* A Recipient may, within 30 days from the date on which the review notice is sent, request an administrative adjudication to contest the violation based on one or more of the applicable grounds specified in Section 9-100-060 of the Code by: (1) mailing the request; (2) delivering the request in-person; or (3) filing an electronic request. Requests shall be submitted in a form or forms prescribed by the Department. A request shall be deemed timely if the request is filed or delivered, in the form and format prescribed in rules, to the address or electronic location, whichever is applicable, indicated on the notice and:

(1)     if filed by mail, the request is postmarked within thirty days of the date on which the review notice is sent; or

(2)     if filed electronically or in-person, the request is electronically submitted or delivered in-person within thirty days of the date on which the review notice is sent.

(d)     *Finding.* Upon receiving a Recipient's timely request for an administrative adjudication under subsection (c), above, the Department shall refer the matter to an Administrative Law Officer for an administrative correspondence hearing conducted in accordance with Section 9-100-070 of the Code, or an administrative in-person hearing conducted in accordance with Section 9-100-080 of the Code, to review the specified violation, as requested by the Recipient.

(1)     If upon conclusion of the hearing, the Administrative Law Officer  finds that the Recipient is not liable for the violation, the Administrative Law Officer  shall issue a written order vacating the prior determination of liability, and any subsequent final determination, as of the date of the hearing; and

(i)     if the Recipient has previously paid a fine, late payment penalty or collection fee for the violation, the Administrative Law Officer  shall enter an order directing the Comptroller to refund to the Recipient the total amount paid to the City by the Recipient for such fine, late payment penalty or collection fees; or

(ii)     if the Recipient has not previously paid a fine, late payment penalty or collection fee for the violation, the Administrative Law Officer  shall enter an order extinguishing any debt the Recipient owed to the City for an uncollected fine, late payment penalty or collection fee for the violation.

(2)     If upon conclusion of the hearing, the Administrative Law Officer  finds that the Recipient is liable for the violation, the Administrative Law Officer   shall enter an order confirming liability in the total amount of the earlier fine, late payment penalty and collection fee, whether such amount was paid or unpaid.   The confirmation shall be a new and separate

assessment of liability to which all previous payments made in connection with the violation shall be applied. Except as otherwise provided in SECTION IV of this Ordinance, any amount so assessed that was not previously paid shall constitute a debt due and owing the city, which may be enforced in the manner set forth in Section 2-14-103 of the Code.

(e) *Administrative review.* An Administrative Law Officer's determination of whether or not liability for a violation exists pursuant to this Ordinance shall constitute a final determination for purposes of judicial review under the Illinois Administrative Review Law.

(f) *No response.* If a Recipient fails to respond to the review notice, the Department shall mail a written notice to the Recipient confirming liability in the total amount of the earlier fine, late payment penalty and collection fee, whether such amount was paid or unpaid. The confirmation shall be a new and separate assessment of liability to which all previous payments made in connection with the violation shall be applied. Except as otherwise provided in SECTION IV of this Ordinance, any amount so assessed that was not previously paid shall constitute a debt due and owing the city, which may be enforced in the manner set forth in Section 2-14-103 of the Code. The Department's confirmation notice issued pursuant to this subsection shall be considered to be a default order for purposes of a petition to set aside the confirmation. An Administrative Law Officer shall review a petition to set aside the Department's confirmation pursuant to Section 2-14-108 of the Code.

(g) *Refund-issuance.* Upon receipt by the Department of an Administrative Law Officer's order issued pursuant to Subsection (d)(1)(i) of SECTION III of this Ordinance and a refund application completed by the Recipient, the Comptroller shall issue a refund in the appropriate amount to the Recipient within 90 days by mail to the address provided by the Recipient.

(h) *Other outstanding debt.* Nothing provided in this Ordinance shall be construed to prohibit the Comptroller from applying the amount of any refund ordered pursuant to Subsection (d)(1)(i) of SECTION III of this Ordinance to any debt due and owing to the City due to a final determination of liability for a parking, standing, compliance, automated traffic law enforcement system, or automated speed enforcement system violation, and reduce the amount of the refund accordingly, prior to issuing a refund to the Recipient. If any refund is applied pursuant to this subsection, the Department shall notify the Recipient in writing.

(i) *Other enforcement.* The City shall not consider any final determination of liability issued with respect to a violation subject to the review notice procedure set forth in this Section for purposes of determining whether a vehicle is eligible for immobilization or impoundment under Section 9-100-120 of the Code, or driver's license suspension under Section 9-100-130 of the Code.

### SECTION IV.

(a) The Department shall establish a debt relief program pursuant to this Ordinance. The debt relief program shall provide for relief as provided in this Ordinance only if an Eligible Debtor complies with the applicable requirements of the debt relief program during the time provided. The Department may promulgate such rules as are necessary to implement the provisions of SECTION IV of this Ordinance.

(b) If any Eligible Debtor pays the fine for a violation subject to administrative

adjudication under this Ordinance and applies for a debt relief within 30 days of the issuance of a confirmation of liability on the violation, or within 30 days of the final order disposing of any timely-filed action seeking administrative or judicial review of that confirmation of liability: (1) the Department shall waive all previously-assessed late payment penalties, interest, collection fees, and collection costs for that violation; and (2) the City shall not seek civil or criminal prosecution against the Eligible Debtor for the failure to have paid fines, interest, fees, costs or penalties for that violation.

(c) If the only debt owed by an Eligible Debtor as the result of the confirmation of liability is for late payment penalties or collection fees, the Department shall automatically waive such penalties or fees.

(d) Relief shall be granted only if all of the applicable relief conditions set forth in this Ordinance and any rules promulgated thereunder are satisfied by the Eligible Debtor.

SECTION V.

(a) For purposes of this SECTION V of this Ordinance, "Person Eligible for Refund of a Late Payment Penalty" means any person who on or after July 1, 2012 and until May 31, 2015: (i) paid a fine for violation of Section 9-101-020 or 9-102-020 of the Code within 25 days of the determination of liability for the violation; and (ii) was charged and paid a late payment penalty for the violation.

(b) The Comptroller shall send a refund notice to a Person Eligible for Refund of a Late Payment Penalty. The notice shall specify: (i) the violation number; (ii) the violation date; (iii) the deadline for requesting a refund; and (iv) information about how to claim a refund.

(c) If a Person Eligible for Refund of a Late Payment Penalty requests a refund within 60 days of the refund notice as provided in the refund notice, the Comptroller shall refund the late payment penalty paid for the violation specified in the refund notice to the Person Eligible for Refund of a Late Payment Penalty.

SECTION VI. If there is a conflict between this Ordinance and any provision of the Code, this Ordinance shall prevail.

SECTION VII. This Ordinance shall take effect upon passage and approval.

APPROVED

Rahm Emanuel s KP

Mayor

9/21/16

APPROVED

Stephen R. Patton

CORPORATION COUNSEL

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

THEMASHA SIMPSON, DELYN MCKENZIE- )
LOPEZ and ERICA LIESCHKE, individually )
and on behalf of all others similarly situated, )
    Plaintiffs, )
)
    v. )
)
CITY OF CHICAGO, a Municipal )
Corporation, )
    Defendant. )

Judge Kathleen G. Kennedy

**FEB 1 9 2016**

Circuit Court – 1718

15 CH 4802

## OPINION AND ORDER

INTRODUCTION

    This is a putative class action against Defendant City of Chicago related to the notice the City provides and the late penalties the City assesses for automated speed enforcement (ASE) violations (speed camera tickets) and automated traffic law enforcement (ATL) violations (red light camera tickets). Plaintiffs seek declaratory and injunctive relief as well as damages and the recoupment of fees and penalties assessed against them. The City filed a motion to dismiss pursuant to 735 ILCS 5/2-619.1, which the parties briefed and argued orally. While the motion was under advisement Plaintiffs filed supplemental authority to which the City responded and Plaintiffs replied. For the reasons that follow, the City's motion is denied in part and granted in part.

STATUTORY FRAMEWORK

    In the Illinois Vehicle Code (IVC), the legislature provides for local administrative adjudication of traffic regulation violations, including ATL and ASE system violations. 625 ILCS 5/11-208.3. The IVC requires the local administrative

1

system to "have as its purpose the fair and efficient enforcement of municipal or county

regulations through the administrative adjudication of [ASE] system or [ATL]

violations." *Id.* The IVC sets forth the statutory requirements for "[a]ny ordinance

establishing a system of administrative adjudication." 625 ILCS 5/11-208.3(b).

The administrative adjudication begins with a determination of the ASE or ATL

violation and the review of that determination in accordance with Section 11-208.3(b)(3)

of the IVC. 625 ILCS 5/11-208.3(b)(3). The administrative adjudication then proceeds

with a violation notice. The statutory requirements for an ASE and ATL violation notice

include

- the date, time, and place of violation
- the particular regulation violated
- any requirement to complete a traffic education program
- the fine and any penalty that may be assessed for late payment or failure to complete a required traffic education program, or both, when so provided by ordinance
- the vehicle make and state registration number
- the identification number of the person issuing the notice
- the statement that the completion of any required traffic education program, the payment of any indicated fine, and the payment of any applicable penalty for late payment or failure to complete a required traffic education program, or both, shall operate as a final disposition of the violation
- information as to the availability of a hearing in which the violation may be contested on its merits
- the time and manner in which a hearing may be had.

625 ILCS 5/11-208.3(b)(2). Additionally, for ASE or ATL violations, the IVC requires

that the "vehicle make shall be specified on the [ASE] system or [ATL] violation notice

if the make is available and readily discernible." *Id.*

2

The City of Chicago established an ASE program (Chicago Municipal Code

(MCC) §§ 9-101-010 *et seq.*), an ATL enforcement system (MCC §§ 9-102-010 *et seq.*), and

a system of administrative adjudication for ASE and ATL violations pursuant to the

IVC (MCC §§ 9-100 *et seq.*). Chapter 9-100 of the MCC addresses the administrative

adjudication of four types of violations: parking, compliance, ATL, and ASE.

Additionally, the MCC includes general provisions on the interpretation of its language,

one of which states: "Except as otherwise explicitly provided in this Code, the word

'shall' as used in this Code is mandatory." MCC § 1-4-100. No explicit alternative

provision for the interpretation of "shall" exists in the ASE, ATL, and administrative

adjudication sections of the MCC.

Under the City's administrative adjudication system that took effect July 1, 2012,

the Department of Finance mails a violation notice "to the address of the registered

owner of the vehicle as recorded with the Secretary of State." § 9-100-045(a).[1] Certain

time frames apply to the notice provision. *Id.* Also, "[t]he notice shall include all

applicable information required in Sections 11-208.3, 11-208.6 and 11-208.8 of the

[IVC]." *Id.*

The City's administrative adjudication system gives the following options to a

person on whom an ASE or ATL violation notice has been served pursuant to the MCC:

within seven days from the date of the notice: (1) pay the indicated fine;
or, in the manner indicated on the notice, either (2) submit the materials
set forth in Section 9-100-070 to obtain an adjudication by mail; or (3)
request an administrative hearing as set forth in Section 9-100-080 to

[1] The statutory framework here is phrased in the present tense and reflects the MCC effective July 1, 2012.
In 2015, the Chicago City Council amended some of the provisions at issue in this case.

3

contest the charged violation. A response by mail shall be deemed timely
if postmarked within seven days of the issuance of the notice of violation.

MCC § 9-100-050 (a). The MCC specifies the duties of the city traffic compliance
administrator when a respondent opts for (2) or (3). MCC § 9-100-050(b) and (c).

The MCC limits and lists the applicable grounds for contesting an ASE or ATL
violation. MCC § 9-100-060 (b). For an ASE, the grounds are (i) the operator of the
vehicle was issued a Uniform Traffic Citation for a speeding violation occurring within
one-eighth of a mile and 15 minutes of the violation that was recorded by the system,
and (ii) the facts alleged in the violation notice are inconsistent or do not support a
finding that a specified traffic law was violated. MCC § 9-100-060(b)(1)(i) and (ii) (eff.
July 1, 2012). For an ATL, the grounds are (i) the operator of the vehicle was issued a
Uniform Traffic Citation for a specified violation, (ii) the operator of the vehicle passed
through the intersection when the light was red either to yield the right-of-way to an
emergency vehicle or as part of a funeral procession, or (iii) the facts alleged in the
violation notice are inconsistent or do not support a finding that a specified traffic law
was violated. MCC § 9-100-060(b)(2)(i), (ii), (iii) (eff. July 1, 2012).

The MCC also provides for contests on the grounds that the violation occurred at
any time during which the vehicle or its state registration plates were reported to a law
enforcement agency as having been stolen and the vehicle or its plates had not been
recovered by the owner at the time of the alleged violation; the vehicle was leased to
another and the lessor has provided the name and address of the lessee in compliance
with Section 9-100-140(c); the vehicle was an authorized emergency vehicle; or the

4

respondent was not the registered owner or lessee of the cited vehicle at the time of the violation. MCC § 9-100-060(b)(3)–(6) (eff. July 1, 2012).

The MCC provides for a determination of liability in the amount of the fine indicated on the notice for a respondent who requested an administrative hearing but failed to pay the indicated fine before or appear at the hearing. MCC § 9-100-050(c). Failure to pay the fine within "25 days of issuance of a determination of liability for a violation of an [ASE] system or an [ATL] enforcement system will result in the imposition of a late payment penalty." *Id.* Additionally, if no response is made under subsection (a), then "the city traffic compliance administrator shall cause a second notice of violation to be sent to the respondent." MCC § 9-100-050(d). The MCC specifies the information to be included in the second notice of violation. *Id.* In subsections (d) and (e) the MCC reiterates the late payment penalty provisions for ASE and ATL violations. MCC § 9-100-050(d) and (e).

FACTUAL ALLEGATIONS

The City issued violation notices to the three named Plaintiffs. Plaintiffs attached to their complaint copies of parts of two notices. One includes a "PAY BY DATE" alleged to be 21 days from the date of the determination of liability notice. The City provided copies of some notices that include photos of the vehicle at issue.

Simpson

The City issued ATL violation notices to Themasha Simpson on April 5 and July 30, 2013. The subject of each of the violations was a Chevy registered in Simpson's name with the Secretary of State. The violation notices listed "OTHR" in the "VEHICLE

5

MAKE" column. The City issued Simpson a determination of liability for each of the violations without sending a second notice. The City assessed a $100 late penalty against Simpson on each of the violations. Simpson has not paid the fines or penalties. The notices indicate that the consequences of unpaid fines include driver's license suspension, vehicle seizure, and referral to a collection agency.

McKenzie-Lopez

The City issued ASE and ATL violation notices to Delyn McKenzie-Lopez on April 29, May 14, May 22, and May 29, 2014. The vehicle that was the subject of each of the violations was a Nissan registered in McKenzie-Lopez's name with the Secretary of State. The violation notices listed "OTHR" in the "VEHICLE MAKE" column. The City issued a determination of liability for each of the violations without sending a second notice. The City assessed a $100 late penalty against McKenzie-Lopez for each of the violations. McKenzie-Lopez paid the fines and penalties for the ASE violation issued May 29, 2014. She has not paid for the other violations. The notices indicate that the consequences of unpaid fines include driver's license suspension, vehicle seizure, and referral to a collection agency.

Lieschke

The City issued an ATL violation notice to Erica Lieschke on June 26, 2010. The vehicle that was the subject of the violation was a GMC registered in Lieschke's name with the Secretary of State. The violation notice listed "OTHR" in the "VEHICLE MAKE" column. The City issued Lieschke a determination of liability without sending

6

a second notice. The City assessed a late penalty of $100 and other amounts against Lieschke, which she paid.

PLAINTIFFS' CLAIMS

Plaintiffs bring eight counts against the City. They propose one class and two sub-classes that correspond to their individual allegations: a "Vehicle Make" class, a "Notice" sub-class, and a "Penalty" sub-class. Class certification is not yet at issue.

## Count I – Declaratory and Injunctive Relief on Behalf of the Vehicle Make Class (Based on Violations of Illinois Constitution, Article VII, Section 6)

In their first count, Plaintiffs seek declaratory and injunctive relief on behalf of the Vehicle Make Class based on alleged violations of the Illinois Constitution. Plaintiffs request a judgment declaring that the City's practice of issuing ASE and ATL violation notices with "OTHR" in the "VEHICLE MAKE" field does not comply with the IVC, making the practice unconstitutional, void, and unenforceable as transgressing the City's home rule authority. Plaintiffs ask the court to enjoin the City from collecting on or enforcing the liability determinations resulting from these violation notices and to award them damages, including pre- and post-judgment interest, costs, and attorney fees.

## Count II – Unjust Enrichment on Behalf of the Vehicle Make Class (Based on Violations of Illinois Constitution, Article VII, Section 6)

In their second count, Plaintiffs seek damages for unjust enrichment on behalf of the Vehicle Make Class. Plaintiffs allege that the City received fines and penalties from Plaintiffs to which it was not entitled because the City's practice transgresses the City's home rule authority by conflicting with the IVC.

7

Count III – Declaratory and Injunctive Relief on Behalf of the Vehicle Make Class (Based on Violation of Section 208.3(b)(2) of the IVC and Section 9-100-045 MCC)

In their third count, Plaintiffs seek declaratory and injunctive relief on behalf of the Vehicle Make Class based on the City's practice of not specifying the vehicle make on the ASE and ATL notices in violation of both the IVC Section 208.3(b)(2) and the MCC Section 9-100-045. Plaintiffs ask the court to declare the violation notices void and unenforceable and to grant preliminary and injunctive relief prohibiting the City from either collecting on or enforcing the violations. Plaintiffs also ask for damages, including pre- and post-judgment interest, attorney fees, and costs.

Count IV – Unjust Enrichment on Behalf of the Vehicle Make Class (Based on Violation of Section 208.3(b)(2) of the IVC and Section 9-100-045 MCC)

In their fourth count, Plaintiffs seek damages for unjust enrichment on behalf of the Vehicle Make Class. Plaintiffs allege that the City received fines and penalties from Plaintiffs to which the City was not entitled because the underlying violations did not specify the make of the subject vehicle as required by the IVC and MCC.

Count V - Declaratory and Injunctive Relief on Behalf of the Notice Sub-Class (Based on Failure to Issue Second Notice in Violation of the MCC)

In their fifth count, Plaintiffs seek declaratory and injunctive relief on behalf of the Notice Sub-Class because the City's practice of not sending a second notice before issuing determinations of liability violates MCC Section 9-100-050(d). Plaintiffs ask the court to declare the determinations of liability void and unenforceable and to grant preliminary and injunctive relief prohibiting the City from either collecting on or enforcing the violations. Plaintiffs also ask for damages, including pre- and post-judgment interest, attorney fees, and costs.

8

## Count VI — Unjust Enrichment on Behalf of the Notice Sub-Class (Based on Failure to Issue Second Notice in Violation of the MCC)

In their sixth count, Plaintiffs seek damages for unjust enrichment on behalf of the Notice Sub-Class. Plaintiffs allege that the City received fines and penalties from Plaintiffs to which the City was not entitled because the City issued determinations of liability without issuing a second notice as required by the MCC.

## Count VII — Declaratory and Injunctive Relief on Behalf of the Penalty Sub-Class (Based on Assessment of Penalties in Violation of the MCC)

In their seventh count, Plaintiffs seek declaratory and injunctive relief on behalf of the Penalty Sub-Class because the City assesses penalties and fines on alleged ASE and ATL violations prior to the expiration of the 25-day grace period specified in the MCC. The City's determination of liability notices set a "pay-by" date, which is 21 days from the date of the determination of liability notice, and provide for a late penalty if payment is not received by the pay-by date. Plaintiffs ask the court to declare the City's penalty assessment practice unlawful and the penalties resulting from this practice void and unenforceable. They also ask the court to grant preliminary and injunctive relief prohibiting the City from collecting on or enforcing penalties on alleged ASE and ATL violations assessed prior to the expiration of the 25-day grace period. Plaintiffs also ask for damages, including pre- and post-judgment interest, attorney fees, and costs.

## Count VIII — Unjust Enrichment on Behalf of the Penalty Sub-Class (Based on Assessment of Penalties in Violation of the MCC)

In their eighth count, Plaintiffs seek damages for unjust enrichment on behalf of the Penalty Sub-Class. Plaintiffs allege that the City received fines and penalties from

9

Plaintiffs to which the City was not entitled because the fines and penalties were assessed prior to the expiration of the 25-day grace period set forth in the MCC.

To summarize, Plaintiffs claim that (a) the City exceeded its home rule authority by issuing ASE and ATL violation notices that do not specify the vehicle make as required by the IVC, (b) ASE and ATL violation notices that do not specify the vehicle make are unlawful under the IVC and the MCC, (c) the City's practice of issuing determinations of liability on ASE and ATL violations without sending a second notice is unlawful under the MCC, and (d) the City's practice of assessing penalties on alleged ASE and ATL violations prior to the expiration of the 25-day grace period is unlawful under the MCC. Plaintiff Simpson is not included in the unjust enrichment counts (Counts II, IV, VI, and VIII). Plaintiff Lieschke has withdrawn from Counts VII and VIII.

ANALYSIS

Legal Standard

Section 2-619.1 of the Code of Civil Procedure, 735 ILCS 5/2-619.1, allows a litigant to combine a Section 2-615 motion to dismiss based upon substantially insufficient pleadings with a Section 2-619 motion to dismiss based upon certain defects or defenses. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24. When ruling on a motion to dismiss under either Section 2-615 or Section 2-619 the court must accept all well-pled facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. *Id.*

The question presented by a Section 2-615 motion to dismiss is whether the allegations of the complaint, when taken as true and viewed in a light most favorable to

10

the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009). The question presented by a Section 2-619 motion to dismiss is whether, after admitting the legal sufficiency of the complaint, an "affirmative matter" outside the complaint defeats the cause of action. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008).

Grounds for Dismissal

The City argues the six grounds for dismissal that follow, four pursuant to Section 2-615, and two, unclean hands and standing, pursuant to Section 2-619. First, Plaintiffs' claims amount to an impermissible collateral attack on determinations of liability for which Plaintiffs have administrative remedies, not subject to exhaustion exceptions, that they failed to exhaust. Second, Plaintiffs cannot state a claim for unjust enrichment. Third, Plaintiffs' unjust enrichment claims are barred by the doctrine of unclean hands. Fourth, Plaintiffs' "Vehicle Make" claims fail as a matter of law because (a) the ordinance does not exceed the City's home rule authority and (b) the ATL and ASE notices comply with the vehicle make requirement. Fifth, the "Vehicle Make" and "Second Notice" requirements are directory, not mandatory. Sixth, Plaintiffs lack standing to bring their penalty claims.

The City essentially asserts that its exhaustion argument is dispositive. Plaintiffs assert that the mandatory-directory question is dispositive of all the City's arguments. Because the resolution of the mandatory-directory question informs the exhaustion analysis, discussion of the parties' positions properly begins with the mandatory-directory question. Answering that question involves the mandatory-directory analysis

11

generally, both the legislative intent and the mandatory–directory analysis as applied to the second notice and the vehicle make requirements, which are distinguishable, and the consequences of noncompliance with a mandatory requirement.

The Illinois Supreme Court clarified the analysis of what "shall" means.

Construction of the word "shall" involves two dichotomies, the mandatory-permissive and the mandatory-directory. *People v. Robinson*, 217 Ill. 2d 43, 51 (2005). In *Robinson*, the court acknowledged that it had helped create the confusion between the two dichotomies by speaking about them as if they were the same. *Id.* at 53. Thus, the court clarified that the word "shall" is presumed to be mandatory in the mandatory/permissive dichotomy, which relates to whether the government actor must act or is permitted to act. *Id.* at 52. Further, the court explained that the word "shall" is not determinative in the mandatory-directory dichotomy. *Id.* at 54. Rather, the construction of "shall" is a matter of legislative intent." *Id.* However, as the court explained in *In re M.I.*, language issuing a procedural command to a government official is presumed to indicate an **intent** that the statutory provision is directory. *In re M.I.*, 2013 IL 113776, ¶ 17. (citing *People v. Delvillar*, 235 Ill. 2d 507, 517 (2009)) (emphasis added). Nevertheless, "[t]his presumption is overcome, and the provision will be read as mandatory, under either of two conditions: (1) when there is negative language prohibiting further action in the case of noncompliance or (2) when the right the provision is designed to protect would generally be injured under a directory reading." *Id.* It follows that no presumption is necessary when the legislature expressly states that the word "shall" means mandatory.

12

The Chicago City Council intended the provisions at issue to be mandatory.

Plaintiffs' case rests on the premise that a governmental actor's failure to follow mandatory statutory provisions renders the governmental actions void. The City disputes this premise and argues that noncompliance with mandatory provisions renders the governmental actions voidable, not void. However, the threshold question is whether the provisions at issue here, the MCC requirements for the specification of vehicle make and the issuance of a second notice, are mandatory.

Plaintiffs argue that the question must be answered in the affirmative based on the City Council's intent, plainly set forth in the MCC, that "[e]xcept as otherwise explicitly provided in this Code, the word 'shall' as used in this Code is mandatory." MCC § 1-4-100. Plaintiffs add that the court is bound by the appellate court's ruling in *Puss N Boots, Inc. v. Mayor's License Commission of the City of Chicago*, 232 Ill. App. 3d 984, (1992), *as supplemented on denial of rehearing* (Aug. 14, 1992), which approved this interpretation of the MCC based on the City Council's intent.

In response, the City argues that *Puss N Boots* is not in accord with current law, as articulated in *Robinson*, which establishes "different senses of mandatory." According to the City, applying *Robinson's* mandatory/permissive – mandatory/directory analysis leads to the conclusion that the MCC provisions at issue here, which the City characterizes as "technical procedural requirements," are directory. (City Mem. in Support, p. 4). However, if there are different senses of "mandatory" and the City Council was confused between mandatory/permissive and mandatory/directory, *Robinson* makes clear that the mandatory/directory question is one of legislative intent.

13

*Robinson*, 217 Ill. 2d at 54. The plain language of the MCC shows that City Council intended the provisions at issue to be mandatory.

The court may not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *Petersen v. Wallach*, 198 Ill. 2d 439, 446 (2002). "[T]here is no rule of construction that authorizes a court to say that the legislature did not mean what the plain language of the statute provides." *In re D.L.*, 191 Ill. 2d 1, 9 (2000). The City Council unambiguously expressed its intent that "shall" is mandatory in the MCC unless explicitly stated otherwise.

Research shows that such a definitive expression of legislative intent on the mandatory/directory question may be rare. See, *e.g.*, Kane County Code ("*Shall*. The word 'shall' is mandatory.' Kane County Code, § 1-2 (amended Dec. 12, 2006); the Code of Civil Procedure ("(a) 'May.' The word 'may' as used in this Article means permissive and not mandatory. (b) 'Shall.' The word 'shall' as used in this Article means mandatory and not permissive." 735 ILCS 5/15-1105); the Election Code ("Whenever the word 'shall' is used it shall be considered mandatory. The use of 'may' is deemed permissive. " 26 Ill. Adm. Code 125.830 (2015)). However, the City offers no authority for the court to act contrary to established principles of statutory construction and construe "shall" as directory regardless of the plain language of the MCC.

Various penalty cases effectuate the MCC's construction of "shall." For example, in *City of Chicago v. Elevated Properties, L.L.C.*, 361 Ill. App. 3d 824, 835 (2005), the court explained that the use of the word "shall" in the MCC is mandatory, not directory,

14

meaning that the trial court was not authorized to find compliance with the Code based on the filing of an appearance when the Code specifically required the filing of a registration statement with the department of buildings on forms provided by the department for that purpose. In *City of Chicago v. Cotton*, 356 Ill. App. 3d 1 (1992), the court emphasized principles of statutory construction and agreed with the City of Chicago that the circuit court acted without authority and entered a void judgment when it imposed a fine below the statutorily established range.

Both the intent of the MCC and the application of the mandatory/directory analysis make the second notice provision mandatory.

The MCC's second notice requirement does not refer to underlying IVC provisions. The plain language of the MCC shows that the City Council intended the second notice provision to be mandatory, not directory. Even if the legislative intent were unclear, the mandatory/directory analysis shows that the second notice provision is mandatory.

The use of "shall" in the procedural command to provide a second notice is presumed to be directory rather than mandatory. Further, the MCC has no negative language prohibiting further action or indicating a specific consequence for failing to provide the second notice. However, the second notice provision is designed to protect a non-responding violator's right to contest a violation before a determination of liability issues. This right is generally injured by a directory reading. Therefore, the term "shall" means mandatory in the second notice provisions of the MCC. As a result,

15

Plaintiffs' second notice claims survive the City's Section 2-615 motion to dismiss based on legislative intent as well as the application of the mandatory/directory analysis.

As to vehicle make, the underlying IVC provisions are directory so Plaintiffs' vehicle make-related claims fail.

The MCC provides that the notice issued by the department of finance shall include all applicable information required in specified sections of the IVC. MCC 9-100-045 (eff. July 1, 2012). Thus, the inquiry on the motion to dismiss the vehicle-make related claims does not end with the determination that "shall" is mandatory, but rather, requires the mandatory/directory analysis of the underlying IVC provisions.

The IVC states, "[w]ith regard to [ASE] system or [ATL] violations, vehicle make shall be specified on the [ASE] system or [ATL] violation notice if the make is available and readily discernible." 625 ILCS 5/11-208.3(b)(2). The mandatory/directory analysis of this provision follows. The IVC does not define "shall" as mandatory. As procedural commands, the use of "shall" in this section of the IVC is presumed to be directory. The IVC has no negative language prohibiting further action or indicating a specific consequence for failing to include the vehicle make in the notice. The right that this IVC provision was designed to protect, ensuring the issuance of a violation notice to the owner of the violating vehicle, is not injured by a directory reading. Therefore, the term "shall" means directory in this section of the IVC. Because the underlying IVC provisions with which the MCC mandates compliance are directory, Plaintiffs cannot state a claim against the City for violation of the vehicle make provisions. If a procedural command to a government official is directory rather than mandatory, then

16

failure to comply with a particular procedural step will not have the effect of invalidating the governmental action to which the procedural requirement relates. *In re James W.*, 2014 IL 114483, ¶ 35.

<u>Noncompliance with mandatory procedural requirements makes the determinations of liability void.</u>

The City relies on *Newkirk v. Bigard*, 109 Ill. 2d 28 (1985), for the proposition that where administrative jurisdiction is proper, the failure to comply with a mandatory procedural requirement may make the administrative action voidable not void *ab initio.* Specifically, the City asserts that the administrative decisions here are not void because the City satisfied the three requisite criteria: personal jurisdiction, subject matter jurisdiction, and the inherent power to issue the determinations of liability.

In *Newkirk*, the plaintiffs sought to have a mining board order declared void *ab initio* for omitting specifics that the statute provided "shall" be included. The court determined that "shall" meant mandatory in the statute, and agreed that the order was defective. Yet the court reasoned that because the mining board had personal and subject matter jurisdiction, as well as the inherent authority to issue the order, the omissions made the order voidable, not void.

The *Newkirk* result is inconsistent with decisions in which courts have held that the failure to comply with mandatory statutory provisions makes the resulting administrative action void, or, phrased differently, invalidates the action. See, *e.g.*, *Hester v. Kamykowski*, 13 Ill. 2d 481, 484–85 (1958) (election statute); *In re Disconnection of Certain Territory from Machesney Park*, 122 Ill. App. 3d 960, 966 (1984) (Illinois Municipal

17

Code) ("A mandatory provision in a statute is one which renders the proceeding to which the provision relates void and illegal if the provision is omitted or disregarded.")

Plaintiffs rely on *Andrews v. Foxworthy*, 71 Ill. 2d 13 (1978), for the proposition that the City's failure to follow mandatory statutory requirements renders the violations at issue void, not voidable. In *Andrews*, the trial court held that the failure to publish the assessment changes in a nonquadrennial year rendered the assessment increases void. The appellate court affirmed. The supreme court framed the issue as whether the statutory publication date for increased assessments in a nonquadrennial year is merely directory or is mandatory such that tardy publication invalidates the increase. The court found the publication date at issue to be mandatory and explained: "We do not consider the failure to comply with a mandatory requirement of publication to be 'some informality or clerical error.'" *Id.* at 24. The supreme court affirmed the judgment of the appellate court.

*Newkirk* and *Andrews* remain good law. Harmonizing their rulings may depend on a party's access to administrative review to seek a voidability determination. Assuming that this is the applicable distinction, Plaintiffs here lack that access due to the MCC's limitations on the grounds for contesting an ASE or ATL violation. See MCC § 9-100-060(b) (eff. July 1, 2012). In any case, under *Andrews*, noncompliance with the mandatory second notice provision voids the resulting determinations of liability. Plaintiffs were not required to exhaust administrative remedies.

The City argues that Plaintiffs' claims should be dismissed as impermissible collateral attacks on final administrative decisions. Generally, a party must exhaust

administrative remedies before seeking judicial review. *Poindexter v. State of Illinois,* 229 Ill. 2d 194, 206–07 (2008). However, a party need not exhaust administrative remedies in order to challenge an administrative decision that is void. "It is well established that 'a void judgment may be attacked at any time, either directly or collaterally, and courts have an independent duty to vacate void orders.'" *People v. Jardon,* 393 Ill. App. 3d 725, 740 (2009) (quoting *People v. Mathis,* 357 Ill. App. 3d 45, 51 (2005)). "[T]he 'directory' or 'mandatory' designation . . . denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates." *People v. Robinson,* 217 Ill. 2d 43, 51–52 (2005) (quoting *Morris v. County of Marin,* 18 Cal. 3d 901, 907 (1977)). Because the second notice requirement at issue is mandatory under the MCC the determinations of liability are void and subject to collateral attack. In contrast, the vehicle make requirement is directory and not subject to collateral attack as void.

Plaintiffs cite as supplemental authority *Maschek v. City of Chicago,* 2015 IL App (1st) 150520, a challenge to a ticket resulting from an ASE camera operating near a school. As a threshold issue the court in *Maschek* ruled that the plaintiff's claim was not barred because he voluntarily paid and failed to exhaust his administrative remedies to contest the ticket. The court reasoned that the plaintiff's dispute with the City's means of enforcement involved neither issues of fact nor issues requiring the agency's particular expertise. Rather, because the plaintiff attacked the issuance of the ticket as not authorized by statute his claim was subject to judicial review without first exhausting administrative remedies. Applying the *Maschek* analysis here provides an

19

alternative basis for rejecting the City's collateral attack argument as to the second notice requirement.

Plaintiffs failed to state a claim for a home rule-related constitutional violation.

The Illinois Constitution provides that "[h]ome rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. Art. VII, § 6(i). The IVC specifically provides that its provisions "shall be applicable and uniformly applied and enforced throughout this State, in all other political subdivisions and in all units of local government." 625 ILCS 5/11-208.1. Plaintiffs claim that the City's application and enforcement of the MCC fail to comply with the IVC and therefore transgress the City's home rule authority. The City argues that home rule authority can only be exercised through legislative action, not through practice, that is, through application or enforcement. The City also argues that the notices comply with the IVC's vehicle make requirement because they include photos of the vehicles.

As stated above, the IVC's vehicle make provisions are directory, making the MCC's provision directory. Plaintiffs' constitutional claims relate only to the vehicle make allegations, and the notices substantially comply with the IVC. Therefore, Plaintiffs' vehicle make-related claims fail, and the court need not reach the question of whether the City's practices constitute the exercise of the City's home rule authority.

Plaintiffs have standing to pursue their penalty claims.

The City argues that Plaintiffs lack standing for their penalty claims in Counts VII and VIII. Simpson is not included in Count VIII, and Lieschke has withdrawn from Counts VII and VIII. Thus, to proceed Simpson and/or McKenzie-Lopez must have standing to bring Count VII, and McKenzie-Lopez must have standing to bring Count VIII.

"The doctrine of standing insures that issues are raised only by those parties with a real interest in the outcome of the controversy." *Carr v. Koch*, 2012 IL 113414,¶ 28. To have standing a party must have sustained, or be in immediate danger of sustaining, a direct injury as a result of the enforcement of the challenged statute. *Id.* "The claimed injury, whether actual or threatened, must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by the grant of the relief requested." *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 419-20 (2005).

The City bases its standing argument on Plaintiffs' failure to allege that they were injured or are in immediate danger of sustaining an injury based on the late penalties allegedly assessed in violation of the 25-day grace period. Additionally, the City contends that Simpson lacks standing on these counts because she has not made any payment. The City also argues that Simpson cannot meet the traceability requirement for standing because Simpson refused to pay the City, so her actions, not the City's, caused the threats of additional payments and vehicle seizure. Further, the

21

City argues that Plaintiffs do not have standing because they did not allege that they paid the fine after the 21st and before the 25th days.

The MCC provides that "[f]ailure to pay the fine within . . . 25 days of issuance of a determination of liability for a violation of an [ASE] system or an [ATL] enforcement system, will result in the imposition of a late payment penalty pursuant to subsection (e) herein." MCC 9-100-050(c) (eff. July 1, 2012). However, the alleged failure to comply with the mandatory second notice requirement voids the determination of liability as well as any late penalty assessed on that liability. Therefore, Simpson's failure to pay a penalty is irrelevant to the standing analysis. Plaintiffs Simpson and McKenzie-Lopez have standing because they sufficiently alleged an injury, which the City has the power to redress, that is fairly traceable to the actions of the City in failing to comply with a mandatory procedure.

Plaintiffs stated a claim for unjust enrichment based on fees collected pursuant to void determinations of liability made without a second notice.

To state a claim for unjust enrichment, the plaintiff must allege facts that show that the defendant "has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Healthcare Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). The City argues that it is not unjust for it to retain fines paid for violations of law because retaining the fines does not violate the fundamental principles of justice, equity, and good conscience. Further, the City argues that Plaintiffs ignored the notices they received and assert an entitlement to ignore the notices for

22

what the City characterizes as purely technical reasons: the notices did not spell out in text the makes of their vehicles, the first notices were not followed by second reminder notices before final determinations were made, and the notices provided 21-day rather than 25-day late-fee grace periods. The City argues that any technical violation that may have occurred did not impact Plaintiffs' conduct or rights in any way because Plaintiffs received notices that informed them of their rights to pay or to contest the violations.

Plaintiffs argue that the City's collection of fines and penalties paid by Plaintiffs and class members was unjust because the City was not entitled to collect those payments. Further, the City's failure to follow the law deprived thousands of citizens of proper notice and due process, and illegally accelerated the City's ability to increase and collect fines and penalties. Plaintiffs argue that the City's retaining Plaintiffs' payments violates the fundamental principles of justice, equity, and good conscience.

The ordinance makes it clear that the City was required to send a second notice before determining liability. The City argues that notices received by Plaintiffs satisfied due process because "due process only requires notice and an opportunity to be heard." *First Lien Co. v. Markle*, 31 Ill. 2d 431, 438 (1964). However, "what due process entails is a flexible concept in that not all situations calling for procedural safeguards call for the same kind of procedure." *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 272 (2004). Here, Plaintiffs' receipt of a single violation notice does not mean that due process was satisfied when the ordinance mandates that two notices be sent to a non-responder before a determination of liability. MCC 9-100-090(b) (eff. July 1, 2012). Thus, McKenzie-Lopez and Lieschke have stated a claim for unjust enrichment because they

23

have sufficiently alleged facts showing that the City's retention of payments from determinations made without a second notice violates the fundamental principles of justice, equity, and good conscience.

Plaintiffs stated a claim for unjust enrichment based on premature late fees.

Plaintiffs also argue that the City was unjustly enriched by assessing premature late fees against McKenzie-Lopez. The City argues that Plaintiffs did not state a claim for unjust enrichment because McKenzie-Lopez did not allege that she paid the penalty within the 25-day period prescribed by statute. However, McKenzie-Lopez alleges that the City failed to follow the law, which resulted in the City's impermissibly accelerating the determination of liability and, ultimately, the assessment of late fees. The alleged practice of accelerating late fees, without statutory compliance, is sufficient to show a violation of the fundamental principles of justice, equity, and good conscience. Therefore, McKenzie-Lopez stated a claim for unjust enrichment resulting from the premature penalty assessment.

Plaintiffs' claims are not barred by the doctrine of unclean hands.

The City argues that Plaintiffs have unclean hands because they violated traffic safety laws and then they ignored the notice they received. The doctrine of unclean hands bars equitable relief when the party seeking that relief is guilty of misconduct in connection with the subject matter of the litigation. *Thomson Learning, Inc. v. Olympia Properties, LLC,* 365 Ill. App. 3d 621, 634 (2006). Misconduct by a plaintiff that will defeat the plaintiff's recovery under the unclean hands doctrine "must have been conduct in connection with the very transaction being considered or complained of, and must have

24

been misconduct, fraud or bad faith toward the defendant making the contention." *Baal v. McDonald's Corporation*, 97 Ill. App. 3d 495, 500–01 (1981). The doctrine of unclean hands is not intended to prevent equity from doing complete justice. *Id.*

The City argues that Plaintiffs' violations of traffic safety laws should not be disregarded or minimized; the violations amount to misconduct that prevents Plaintiffs from recovering in equity. Plaintiffs argue that a traffic ticket is not the type of misconduct toward the City that the doctrine of unclean hands is designed to prevent. Plaintiffs also point out that the doctrine of unclean hands is neither favored by the courts nor applied in the absence of bad faith or fraud.

Plaintiffs persuasively argue that the traffic safety law violations here are the result of their mistakes, but their mistakes were not fraudulent or in bad faith. Therefore, Plaintiffs' conduct does not rise to the level required for the doctrine of unclean hands to bar their claims.

IT IS HEREBY ORDERED:

1.  Defendant's motion to dismiss Plaintiffs' complaint is granted in part and denied in part.

2.  Counts I, II, III, and IV are dismissed with prejudice pursuant to 735 ILCS 5/2-615.

3.  Defendant's motion to dismiss Counts V, VI, VII, and VIII is denied.

4.  Defendant is granted 28 days to answer Counts V, VI, VII, and VIII.

5.  This case is continued to March 25, 2016 at 10:15 a.m. for status.

Judge Kathleen G. Kennedy

ENTER: _____

FEB 19 2016

Circuit Court – 1748

25