## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ANTOINE WILLIS, DELYN MCKENZIE-LOPEZ and ERICA LIESCHKE, individually and on behalf of all others similarly situated, | ) ) ) | **Case No. 1:16-cv-10791** |
| | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | **Honorable Sara L. Ellis** |
| | ) | |
| CITY OF CHICAGO, a Municipal Corporation, | ) ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### AMENDED COMPLAINT

Plaintiffs Antoine Willis, Delyn McKenzie-Lopez and Erica Lieschke ("Plaintiffs"), individually and on behalf of all others similarly situated, complain against Defendant City of Chicago (the "City" or "Defendant") as follows:

### ONCE UPON A TIME…

*Once upon a time, there was a Mayor out of luck.*
*The Mayor had spent his City's last buck.*

*He asked all of his horses and men what to do,*
*but not a single one had a solitary clue.*

*But then a new staffer, short in stature, had a plan.*
*A plan that would fix all the problems in the land.*

*"Mr. Mayor!" he cried. "I know just what to do!*
*We'll spin straw into gold to raise revenue."*

*The Mayor got quiet. You could only hear crickets.*
*He had no straw at all, just void speed camera tickets.*

*The little aide jumped up. "Those old tickets are fine! The red light tickets too!*
*We'll take these void tickets and turn old debts into new!"*

*The Mayor smiled. He just had to laugh.*
*You can always balance the budget with Rumpelstiltskin on staff.*

1.     Unfortunately, this is no fairy tale.  It is just the latest chapter in the City of Chicago's scandal-plagued speed and red light camera program.

2.     Over the past decade, the City has collected hundreds of millions of dollars in fines and penalties from individuals accused of speed and red light camera violations.  Because the City failed to properly notify these individuals of their alleged violations and illegally sped up the imposition of liability, a Judge in the Circuit Court of Cook County recently held that those fines and penalties are illegal and void.  *See Simpson et al. v. City of Chicago*, Case No. 15 CH 4802 (Circuit Court of Cook County, Illinois).

3.     On the hook for hundreds of millions of dollars in illegal fines and penalties, the City recently passed an ordinance that purports to allow it to issue *new* notices and initiate *new* hearings that will create *new* liabilities, fines and penalties based on tickets issued years ago that a Judge has already ruled were void.

4.     Unfortunately for the City, in the real world Rumpelstiltskin cannot save the day. That is because the Illinois Vehicle Code and the Illinois Constitution specifically prohibit the procedures the Ordinance purports to authorize.

## INTRODUCTION

5.     This action challenges the legality and constitutionality of the City of Chicago Automated Enforcement Violation Review and Refund Ordinance of 2016 (the "Automated Enforcement Ordinance" or "Ordinance"), which became effective on September 21, 2016.  The Automated Enforcement Ordinance purports to authorize administrative adjudications of alleged speed and red light camera offenses that occurred from approximately March 23, 2010 to May 14, 2015.  A copy of the Automated Enforcement Ordinance is attached hereto as **Ex. A**.

6.     All of the alleged violations covered by the Ordinance were previously subjected to administrative adjudications years ago.  As explained below, however, none of the accused individuals subjected to those adjudications are liable for the alleged speed or red light camera violations due to the City's failure to follow mandatory notice provisions and improper acceleration of liability determinations and late penalties in violation of the law.  In other words, these citizens won and the City lost.

7.     Having failed the first time around to establish liability for these alleged violations, the City passed the Automated Enforcement Ordinance, not for the altruistic reasons it claims, but rather in a misguided and erroneous effort to get a second bite at the apple and attempt to impose liability for these same offenses years after the fact.

8.     The City, however, cannot willy-nilly change its own laws to give itself a second opportunity to extract fines and penalties from its citizens.  To the contrary, the City's ability to enforce speed and red light camera violations is specifically limited by Illinois law.

9.     The Illinois Vehicle Code expressly limits a municipality's home rule authority to adjudicate speed and red light camera violations and requires that any procedures adopted by a municipality to adjudicate such violations be consistent with the specific time limitations and procedures enumerated in the Illinois Vehicle Code.

10.     Nothing in the Illinois Vehicle Code, however, authorizes a second proceeding to adjudicate "new and separate" liability for past speed and red light camera violations.  *Compare* 625 ILCS 5/11-208.3(a) (setting forth specific procedures for the one and only type of administrative proceeding to adjudicate liability and impose fines and penalties) *with* Automated Enforcement Ordinance (**Ex. A**) (setting forth very different procedures for administrative proceeding to adjudicate "new and separate" liabilities for offenses that occurred years ago).

3

11.    In fact, the Automated Enforcement Ordinance is at odds with virtually every procedural requirement of the Illinois Vehicle Code and completely undermines its purpose to ensure the "fair and efficient" adjudication of speed and red light camera violations.  625 ILCS 5/11-208.3(a).  Because the procedures set forth in the Automated Enforcement Ordinance are not authorized by and, in fact, are inconsistent with, the procedures specified in the Illinois Vehicle Code, the Ordinance is an abuse of the City's home rule authority and, therefore, is unconstitutional and invalid.

12.    The Ordinance, in fact, suffers from a litany of infirmities.  For example, it violates the Illinois Vehicle Code's prohibition on the administrative adjudication of speed and red light camera offenses that occurred prior to the effective date of the ordinance authorizing said adjudications.  *See* 625 ILCS 5/11-208.3(a) ("The administrative system shall only have authority to adjudicate civil offenses … that occur *after* the effective date of the ordinance adopting such a system under this Section.") (emphasis added).  In other words, the Illinois Vehicle Code prohibits a municipality from adopting an ordinance authorizing the administrative adjudication of past offenses, but the Automated Enforcement Ordinance purports to do just that.

13.    The Ordinance also authorizes the initiation of an administrative adjudication of alleged speed and red light camera offenses more than 90 days after the alleged offense, which violates the notice requirements of the Illinois Vehicle Code.  The Ordinance also imposes late payment penalties contemporaneously with a determination of liability, which also violates limitations imposed by the Illinois Vehicle Code.

14.    Equally, if not more disturbing, is that the City has already illegally and unlawfully assessed and/or collected fines and penalties for the speed and red light camera offenses subject to the Ordinance.  Yet now, years after the fact, the Ordinance purports to authorize the administrative

4

adjudication of liability for those fines and penalties. But the due process clause of the Illinois Constitution requires a hearing *before* deprivation of property, not the "shoot first ask questions later" system of adjudication authorized by the Ordinance.

15.     Thus, the Ordinance not only violates the Illinois Vehicle Code, but also the due process clause of the Illinois Constitution.

**PARTIES**

16.     Plaintiff Willis is an individual residing in Chicago, Illinois. The City mailed several determinations of liability to Mr. Griffin in connection with thirty-one alleged speed and red light camera violations that allegedly occurred on between 2010 and 2015. Mr. Willis was the registered owner of the vehicles that were the subject of these alleged violations. Under duress, Mr. Willis paid the fines and penalties assessed in connection with several of these alleged violations. The alleged violations referenced above are subject to an administrative adjudication under the Automated Enforcement Ordinance. In fact, Mr. Willis received new notices from the City pursuant to the Automated Enforcement Ordinance with respect to these alleged violations dated January 6, 2017 and with a response deadline of February 5, 2017.

17.     Mr. Willis owns and operates a business that provides transportation for individuals in medical emergencies. Several of the vehicles that were the subject of the alleged violations referenced above were company vehicles. Mr. Willis was not the driver for several of these alleged violations. Rather, several of these alleged violations occurred while his employees were operating the vehicles during the course of their duties of transporting individuals in medical emergencies.

18.     The City communicated a number of threats to Mr. Willis as a result of his non-payment of several of these alleged violations, including threats to revoke his drivers' license, seize his vehicle(s), refer the alleged debt to a law firm or collection agency, notify credit bureaus,

file a lien on his home or other property and institute wage garnishment proceedings.  Directly in response to the *Simpson* litigation, the City ceased enforcement of these and all alleged violations subject to that suit.  The Automated Enforcement Ordinance, however, purports to create a "new and separate" assessment of liability for each such alleged violation, which "shall constitute a debt due and owing the city, which may be enforced in the manner set forth in Section 2-14-103 of the Code."  Automated Enforcement Ordinance at Section III(d)(2), (f) (**Ex. A**).  Thus, while the City ceased enforcement of alleged violations that are likely to be found void in the *Simpson* litigation, the Automated Enforcement Ordinance purports to create "new and separate" liabilities for those old violations that the City can seek to enforce.

19.     Plaintiff McKenzie-Lopez is an individual residing in Chicago, Illinois.  The City mailed her several determinations of liability, dated between May 29, 2014 and July 31, 2014, in connection with alleged speed and red light camera violations that allegedly occurred on April 29, 2014, May 14, 2014, May 22, 2014 and May 29, 2014.  Ms. McKenzie-Lopez was the registered owner of the vehicle that was the subject of all of these alleged violations.  Under duress, Ms. McKenzie-Lopez paid the fines and penalties assessed in connection with the alleged violation issued to her on May 29, 2014, but has not paid the fines and penalties assessed in connection with the alleged violations issued on April 29, 2014, May 14, 2014 and May 22, 2014.  All of the alleged violations referenced above are subject to administrative adjudications under the Automated Enforcement Ordinance.

20.     The City communicated a number of threats to Ms. McKenzie-Lopez as a result of his non-payment of several of these alleged violations, including threats to revoke her drivers' license, seize her vehicle, refer the alleged debt to a law firm or collection agency, notify credit bureaus, file a lien on her home or other property and institute wage garnishment proceedings.

6

Directly in response to the *Simpson* litigation, the City ceased enforcement of these and all alleged violations subject to that suit. The Automated Enforcement Ordinance, however, purports to create a "new and separate" assessment of liability for each such alleged violation, which "shall constitute a debt due and owing the city, which may be enforced in the manner set forth in Section 2-14-103 of the Code." Automated Enforcement Ordinance at Section III(d)(2), (f) (**Ex. A**). Thus, while the City ceased enforcement of alleged violations that are likely to be found void in the *Simpson* litigation, the Automated Enforcement Ordinance purports to create "new and separate" liabilities for those old violations that the City can seek to enforce.

21.     Plaintiff Lieschke is an individual residing in Chicago, Illinois. The City mailed a determination of liability, dated August 12, 2010, to Ms. Lieschke in connection with an alleged red light camera violation that allegedly occurred on June 26, 2010. Ms. Lieschke was the registered owner of the vehicle that was the subject of this alleged violation. Under duress, Ms. Lieschke paid the fines and penalties assessed in connection with this alleged violation. The alleged violation referenced above is subject to an administrative adjudication under the Automated Enforcement Ordinance. In fact, Ms. Lieschke received a new notice from the City with respect to this alleged violation pursuant to the Automated Enforcement Ordinance dated January 6, 2017 and with a response deadline of February 5, 2017.

22.     Defendant City of Chicago ("Defendant" or the "City") is an Illinois Municipal Corporation.

## JURISDICTION AND VENUE

23.     Jurisdiction is proper pursuant to 735 ILCS 5/2-209(a)(1), (3) and (12), (b)(3) and (c) and venue is proper pursuant to 735 ILCS 5/2-101 because Plaintiffs are residents of Cook County, Illinois, Defendant is the City of Chicago and the events and transactions giving rise to

the claims asserted herein occurred in Cook County, Illinois.

**FACTUAL ALLEGATIONS**

**A.     The City's red light and speed camera programs and the existing procedures for administrative adjudication of alleged violations.**

24.     On July 9, 2003, the City of Chicago enacted an ordinance referred to as the automated traffic law enforcement ("ATL") program, which authorized the use of automated cameras to record images of vehicles allegedly used in violation of red light signals. *See* Municipal Code of Chicago ("MCC") §§ 9–102–010 to 9–102–070 (added July 9, 2003). This ordinance also authorized procedures for the administrative adjudication of alleged ATL offenses. *See* MCC § 9-102-030 (added July 9, 2003) (authorizing the use of "administrative adjudication procedures for violations of Section 9-102-020").

25.     On April 18, 2012, the City of Chicago enacted an ordinance, referred to as the automated speed enforcement ("ASE") program, which authorized the use of automated cameras to record images of vehicles allegedly used in violation of local speed limits. *See* MCC §§ 9–101–010 to 9–101–070 (added April 18, 2012). This ordinance also authorized procedures for the administrative adjudication of alleged ASE offenses. *See* MCC § 9-101-030 (added April 18, 2012) (authorizing the use of "administrative adjudication procedures for violations of Section 9-101-020").

**B.     The City's improper efforts to create new administrate procedures to adjudicate prior alleged ATL and ASE violations that were rendered illegal and void.**

26.     Since the inception of the ATL and ASE programs, the City failed to comply with its own mandatory procedures for the administrative adjudication of alleged violations. More specifically, the City repeatedly failed to issue a mandatory second notice to citizens accused of ASE and ATL violations and prematurely issued liability determinations and late penalties. As a

8

result of these unlawful practices, the City deprived citizens of the notice required under the law while accelerating its ability to impose liability and double the amount due on the ticket. In effect, the City illegally "sped up" the timeframe in which it could impose liability, fines and penalties on those motorists.

27. On March 23, 2015, Plaintiffs brought a class action lawsuit against the City seeking, among other things, a declaration that the fines and penalties assessed by the City in violation of the MCC are void, an injunction preventing the City's collection on and enforcement of all such fines and penalties and to recoup the fines and penalties unlawfully collected by the City. *See Simpson et al. v. City of Chicago*, Case No. 15 CH 4802 (Circuit Court of Cook County, Illinois).

28. After it was served with the *Simpson* lawsuit, the City did not change its conduct to conform to the law, but instead it simply changed the law. Specifically, at the behest of Mayor Rahm Emanuel, the City removed the procedural safeguards that it had never followed since the inception of the ATL and ASE programs. *See* CHICAGO CITY COUNCIL, JOURNAL OF PROCEEDINGS, May 6, 2015, at 108500 § 3; MCC § 9-100-050(a) (as amended May 6, 2015).

29. On February 19, 2016, the Honorable Kathleen G. Kennedy issued an Opinion and Order in the *Simpson* case in which she held that the notice provisions of the MCC were mandatory and the City's failure to follow those provisions rendered its actions void. *See* February 19, 2016 Opinion and Order at 13-16, attached hereto as **Ex. B**. Plaintiffs thereafter adduced evidence in the *Simpson* litigation – including sworn testimony from the Managing Deputy Director of the City's Finance Department during a deposition on July 14, 2016 – confirming that for the duration of the class period the City failed to send the required notices and prematurely accelerated liability determinations and late penalties.

30.     Less than two months later, on Friday, September 9, 2016, Mayor Rahm Emanuel, through the City's Corporation Counsel, quietly proposed an ordinance under which *new* administrative procedures would be created to adjudicate the *same* alleged ASE and ATL violations that were the subject of the *Simpson* litigation and which would create "new and separate assessment[s] of liability" for those past alleged violations.  The proposed ordinance was quietly placed on the following Monday's agenda before the City's Finance Committee, which recommended its adoption.  The Mayor signed the ordinance into law on September 21, 2016.  *See* Automated Enforcement Ordinance (**Ex. A**).

31.     The Ordinance was not passed to benefit the citizens of Chicago, but rather was a misguided and erroneous effort to make an end-run around the Court's finding in the *Simpson* litigation that the liability, fines and penalties assessed in connection with past ATL and ASE violations are illegal and void.  Because the liability, fines and penalties for those prior ATL and ASE violations will, quite literally, be wiped off the books, the City is attempting to create "new and separate" liabilities for past, pre-Ordinance offenses for which new fines and penalties can be assessed.  How, one might ask, can that occur in the United States of America?  The answer is that it cannot.

32.     While the Mayor and the City Council are free to change their own local laws to their benefit and at the expense of Chicagoans – a practice which they have repeatedly and unabashedly engaged in since the filing of the *Simpson* suit – they are, thankfully, still bound by the laws of the State of Illinois and the Illinois Constitution.  These laws, which the Mayor cannot simply change upon being caught breaking them, render the Automated Enforcement Ordinance illegal and unconstitutional.

33. Moreover, despite the Ordinance's requirement that these new notices include "information about how to view photos and/or video of the violation online," Automated Enforcement Ordinance at Section III(a)(7) (**Ex. A**), motorists were denied access to these photos and videos on the website the City created for the purpose of administering the administrative adjudications under the Ordinance. This was a wide-spread problem admitted to by the City. *See, e.g.,* David Kidwell, *City admits mistake in trying to fix previous error on red light tickets*, CHICAGO TRIBUNE, January 8, 2017, § 1, at 15 (also available at http://www.chicagotribune.com/news/watchdog/redlight/ct-red-light-camera-notices-0108-20170106-story.html) (citing a City spokesperson who acknowledged a "glitch" and that some of the photos and videos had "yet to be uploaded into the system" and also "suggested high traffic on the website might be to blame"). Plaintiff Willis, for example, was unable to access the photos and/or videos for a several of the alleged violations listed on his "review" notices.

34. Remarkably, when asked what the City is going to do for motorists affected by this problem, a City spokesperson simply said "All we can do is apologize." *Id.* Thus, in addition to being illegal and unconstitutional, the City's implementation of the Automated Enforcement Ordinance was flawed, failed to provide the required information to motorists and failed to comply with the terms of the Ordinance.

**C. The City exceeded its home rule authority in adopting the Automated Enforcement Ordinance because the Illinois Vehicle Code does not authorize the administrative adjudications created by the Ordinance.**

35. The City exceeded its home rule authority in adopting the Automated Enforcement Ordinance because the Illinois Vehicle Code does not authorize the administrative adjudications created by the Ordinance. More specifically, the City's power to create procedures for adjudicating and enforcing the ATL and ASE programs stems exclusively from an authorizing act of the Illinois

11

General Assembly. *See* 625 ILCS 5/11-207 ("[N]o local authority shall enact or enforce any ordinance rule or regulation in conflict with the provisions of this Chapter unless expressly authorized herein."); 625 ILCS 5/11-208.1 ("The provisions of this Chapter of this Act … shall be applicable and uniformly applied and enforced throughout this State, in all other political subdivisions and in all units of local government."); 625 ILCS 5/11-208.2 ("The provisions of this Chapter of this Act limit the authority of home rule units to adopt local police regulations inconsistent herewith….").

36. Therefore, the City has no legal power to create any procedure for adjudicating or enforcing alleged ATL or ASE violations that are inconsistent with or otherwise not authorized by Section 11-208.3, 11-208.6 and 11-208.8 of the Illinois Vehicle Code.

37. While the Illinois Vehicle Code authorizes specified procedures for the administrative adjudication of alleged ATL and ASE violations, nowhere does it authorize a municipality to commence multiple proceedings against an individual for the same offense or to adjudicate alleged violations that occurred prior to the adoption of the ordinance. *See* 625 ILCS 5/11-208.3. But that is exactly what the Automated Enforcement Ordinance purports to do.

38. As noted above, the only type of administrative proceedings authorized by the Illinois Vehicle Code were already initiated years ago against every individual subject to the Automated Enforcement Ordinance, culminating in the issuance of determinations of liability and the termination of those proceedings. Despite the commencement and completion of the only type of administrative adjudications authorized under the Illinois Vehicle Code, the Automated Enforcement Ordinance purports to initiate subsequent administrative adjudications that are not authorized by and are inconsistent with the Illinois Vehicle Code.

39.     These subsequent years-after-the-fact proceedings are not only inconsistent with the Illinois Vehicle Code, but also completely undermine its stated purpose of ensuring the "fair and efficient" adjudication of ATL and ASE violation.  625 ILCS 5/11-208.3(a).  There is nothing fair nor efficient in allowing the City to initiate a second proceeding against the same individuals for the same offense years after they allegedly occurred.

40.     For these reasons, the City exceeded its home rule authority in adopting the Automated Enforcement Ordinance and, therefore, it is illegal, unconstitutional and void *ab initio*. *See, e.g., People ex rel. Ryan v. Vill. of Hanover Park*, 311 Ill. App. 3d 515, 528–29 (1st Dist. 1999) (holding that villages' alternative traffic programs were inconsistent with the Illinois Vehicle Code and, therefore, invalid because even though "the ordinances track the language of the Code *en haec verba* as it defines various offenses, they do not *enforce* those provisions as the Code and attendant provisions contemplate.") (emphasis in original).

**D.     The Automated Enforcement Ordinance purports to authorize administrative adjudications of alleged ATL and ASE violations that occurred prior to its effective date in violation of the Illinois Vehicle Code.**

41.     While the Illinois Vehicle Code grants the City the right to administratively adjudicate ATL and ASE violations, it explicitly prohibits the administrative adjudication of such offenses that occurred prior to the effective date of the ordinance authorizing such adjudications. *See* 625 ILCS 5/11-208.3(a) ("The administrative system shall only have authority to adjudicate civil offenses … that occur *after* the effective date of the ordinance adopting such a system under this Section.") (emphasis added).

42.     In other words, the City lacks the power to enforce *prior* alleged violations via the *new* administrative adjudications established under the Automated Enforcement Ordinance.  The City may only adjudicate alleged violations pursuant to new ordinances *prospectively*.  And this

13

time the City cannot simply re-write the law to suit its purposes. Only the Illinois General Assembly may amend the Illinois Compiled Statutes.

43. Because the Automated Enforcement Ordinance purports to authorize administrative adjudications of ATL and ASE violations that occurred prior to its effective date, it is illegal, unconstitutional and void *ab initio*.

**E.      The Automated Enforcement Ordinance purports to initiate administrate adjudications of alleged ATL and ASE violations more than 90 days after the alleged offense in violation of the Illinois Vehicle Code.**

44. Every individual subject to the Automated Enforcement Ordinance was already subjected to prior administrative adjudications of their alleged ATL or ASE violations. Indeed, the Ordinance itself is limited to individuals "to whom a determination of liability for a violation of Section 9-101-020 or 9-102-20 of the Code was mailed between March 23, 2010 and May 14, 2015." Automated Enforcement Ordinance at Section III(a) (**Ex. A**). Those prior proceedings were terminated years ago. *See, e.g.,* 735 ILCS 5/3-101 ("'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, … which terminates the proceedings before the administrative agency."). Those prior proceedings were illegal and void due to the City's failure to follow the mandatory notice provisions of the MCC.

45. The Automated Enforcement Ordinance, by its own terms, purports to authorize new administrative adjudications of alleged ATL and ASE violations that will result in new and separate assessments of liability, fines and penalties. *See* Automated Enforcement Ordinance at Section III (**Ex. A**).

46. As noted above, such a system of administrative adjudication must comply with the requirements of the Illinois Vehicle Code. The notice provisions of the Automated Enforcement

Ordinance, however, are inconsistent with the limitations imposed by the Illinois Vehicle Code.

47.     More specifically, the Automated Enforcement Ordinance provides that the notice initiating the administrative adjudications under the Ordinance be issued "within 14 months of the effective date of this ordinance" (*i.e.*, between September 21, 2016 and November 21, 2017). Automated Enforcement Ordinance at Section III(a) (**Ex. A**).  In fact, the City began issuing the notices pursuant to the Automated Enforcement Order in December of 2016 and January of 2017.

48.     The Illinois Vehicle Code, on the other hand, requires that any notice initiating the administrative adjudication of alleged ATL or ASE violations be served "within 30 days after the Secretary of State or the lessor of the motor vehicle notifies the municipality or county of the identity of the owner or lessee of the vehicle, but not later than 90 days after the violation."  625 ILCS 5/11-208.3(b)(3); *see also* 625 ILCS 5/11-208.6(d) ("For each violation of a provision of this Code or a local ordinance recorded by an [ATL] enforcement system, the county or municipality having jurisdiction shall issue a written notice of the violation to the registered owner of the vehicle as the alleged violator.  The notice shall be delivered to the registered owner of the vehicle, by mail, within 30 days after the Secretary of State notifies the municipality or county of the identity of the owner of the vehicle, but in no event later than 90 days after the violation."); 625 ILCS 5/11-208.8(e) ("For each violation of a provision of this Code or a local ordinance recorded by an [ASE] system, the municipality having jurisdiction shall issue a written notice of the violation to the registered owner of the vehicle as the alleged violator.  The notice shall be delivered to the registered owner of the vehicle, by mail, within 30 days after the Secretary of State notifies the municipality of the identity of the owner of the vehicle, but in no event later than 90 days after the violation.").

49.     Because, by its own terms, the Automated Enforcement Ordinance seeks to authorize the administrative adjudication of alleged ATL and ASE violations that occurred prior to May 14, 2015, its notice provision – which provides for service of notice years after the alleged violation – fails to comply with the 90-day time limitation imposed by the Illinois Vehicle Code.

50.     In other words, the limitations imposed by the Illinois Vehicle Code were designed to ensure that the administrative adjudication of alleged ATL and ASE violations are conducted fairly and promptly, not years after the fact when memories have faded, access to evidence and witnesses are lost or more difficult to track down, the City itself has problems providing motorists access to photos and videos of the alleged violations and citizens likely no longer even have any recollection of the alleged traffic offense.

51.     Indeed, the stated purpose of Section 11-208.3 is for the "fair and efficient enforcement of municipal or county regulations through the administrative adjudication of [ASE] or [ATL] law violations." 625 ILCS 5/11-208.3(a).  Instituting administrative adjudications years after – and in some cases seven years after – an alleged traffic offense occurred is anything but "fair and efficient."

52.     Because the administrative adjudications authorized by the Automated Enforcement Ordinance are initiated by notices sent more than 90 days after the alleged ATL or ASE violation, it is illegal, unconstitutional and void *ab initio*.

**F.     The Automated Enforcement Ordinance violates the Illinois Vehicle Code by imposing late penalties contemporaneously with a determination of liability.**

53.     Despite the fact that the Automated Enforcement Ordinance purports to establish "new and separate assessment[s] of liability" for prior alleged ATL and ASE violations, it automatically imposes late penalties on motorists contemporaneously with the new determination of liability in violation of the Illinois Vehicle Code.

16

54.     More specifically, the Illinois Vehicle Code provides that "[i]n all municipalities…, the automated speed enforcement system or automated traffic law ordinance shall require that no additional fee shall be charged to the alleged violator for exercising his or her right to an administrative hearing, *and persons shall be given at least 25 days following an administrative hearing to pay any civil penalty* imposed by a finding that Section 11-208.6 [ATL], 11-208.8 [ASE], … or a similar local ordinance has been violated."  625 ILCS 5/11-208.3(b)(3) (emphasis added); *see also* 625 ILCS 5/11-208.6(j) (limiting initial fine for ATL violations to $100 and providing that an additional $100 late payment penalty can only be assessed "for failure to pay the original penalty … in a timely manner"); 625 ILCS 5/11-208.8(c)(1)-(2) (limiting initial fine for ASE violations to $50-$100 and providing that an additional $50-$100 late payment penalty can only be assessed "for failure to pay the original penalty in a timely manner").

55.     In other words, once a liability determination is administratively rendered, the Illinois Vehicle Code requires that motorist be given at least 25 days to pay the underlying fine.

56.     The Automated Enforcement Ordinance, however, directs that liability determination shall be entered not only in the amount of the applicable fine, but also for the "late payment penalty."  *See* Automated Enforcement Ordinance at Section III(d)(d) (**Ex. A**) ("If upon conclusion of the hearing, the Administrative Law Officer finds that the Recipient is liable for the violation, the Administrative Law Officer shall enter an order confirming liability in the total amount of the earlier fine, *late payment penalty* and collection fee….  The confirmation shall be a new and separate assessment of liability….") (emphasis added); *see also id.* at Section III(f) ("If the Recipient fails to respond to the review notice, the Department shall mail a written notice to the Recipient confirming liability in the total amount of the earlier fine, *late payment penalty* and collection fee….  The confirmation shall be a new and separate assessment of liability….")

(emphasis added).

57.     Thus, under the Automated Enforcement Ordinance, motorists are not "given at least 25 days following an administrative hearing to pay any civil penalty," but rather are charged a late payment penalty (and collection costs) at the very same time they are purportedly found liable for the underlying fine.  Because this violates Section 11-208.3(b)(3) of the Illinois Vehicle Code, the Automated Enforcement Ordinance is illegal, unconstitutional and void *ab initio*.

**G.     The Automated Enforcement Ordinance violates the due process clause of the Illinois Constitution.**

58.     When the government deprives citizens of liberty or property, due process requires a hearing "at a meaningful time and in a meaningful manner."  *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972).  The Supreme Court "has traditionally insisted that, whatever its form, opportunity for that hearing must be provided *before* the deprivation at issue takes effect."  *Id.* (emphasis added).  As the Supreme Court explained:

> If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented.  At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place.  Damages may even be awarded to him for the wrongful deprivation.  But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred.  'This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone.'

*Id.* at 81–82 (quoting *Stanley v. Illinois*, 405 U.S. 645, 647 (1972)); *see also U.S. v. Wilson*, 159 F.3d 280, 290 (7th Cir. 1998) ("[A] hearing at a 'meaningful time' generally means one held before someone is separated from their property….").[1]

---

[1] Illinois courts "interpret the due process clause of our state constitution the same way that the United State Supreme Court has interpreted the due process clause in the federal constitution."  *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 50.

59.     Here, the Automated Enforcement Ordinance purports to authorize the administrative adjudication of alleged ATL and ASE violations and the assessment of "new and separate" liabilities *after* the City had already assessed and collected the underlying fines and penalties.  In fact, despite the fact that the Ordinance purports to establish "new and separate liability" for which a "new and separate" debt arises, the City has already collected this new and yet-to-be established debt *years prior* to the hearings authorized under the Ordinance to adjudicate these "new and separate" liabilities.

60.     In other words, the City wants to turn the Constitution on its head.  The result of this Ordinance would be to take money now (*i.e.*, from 2010 to 2015) and determine liability much, *much* later (by authorizing hearings that take place in 2017 to adjudicate the propriety of taking that money years earlier).  The due process clause of the Illinois Constitution was designed to prevent precisely these kinds of results and the arbitrary governmental actions that bring them about.

61.     Furthermore, the unreasonable delay in providing a hearing in and of itself deprives citizens "of the fundamental fairness which due process requires."  *Stull v. Dept of Children & Family Servs.*, 239 Ill. App. 3d 325, 335 (5th Dist. 1992) (holding that "nearly one year is an unreasonable length of time" in administrative expungement hearing and, therefore, the delay violated due process).

62.     Here, the Automated Enforcement Ordinance purports to authorize administrative hearings for alleged ATL and ASE violations that occurred, at a minimum, *two to seven years ago*.  This multi-year delay in adjudicating ATL and ASE violations is unreasonable on its face.  Indeed, as noted above, the City itself had problems providing motorists with the photos and/or videos of alleged violations from years ago.

63.     Moreover, it is absurdly out of proportion with the time limits established by the Illinois legislature for the "fair and efficient" adjudication of alleged ATL and ASE violations. 625 ILCS 5/11-208.3(a); *see also Lyon v. Dep't of Children & Family Servs.*, 209 Ill. 2d 264, 274 (2004) ("Violation of state requirements may not indicate a due process violation, and vice versa, but these requirements are a useful reference because they represent standards that the General Assembly … concluded were sufficient.").

64.     As noted above, the Illinois Vehicle Code requires that any notice initiating the administrative adjudication of alleged ATL or ASE violations be served no later than 30 to 90 days after the alleged violation.  *See* 625 ILCS 5/11-208.3(b)(3); 625 ILCS 5/11-208.6(d); 625 ILCS 5/11-208.8(e).  The provision of the Automated Enforcement Ordinance authorizing notice to be served two to seven years after the alleged violation so grossly deviates from the time limitations set by the Illinois Legislature that it unquestionably violates due process.  *See Weiner v. Illinois Dep't of Fin. & Prof'l Regulation*, 2012 IL App (1st) 110190-U, ¶ 30 ("When considering whether violation of a … deadline violates due process, the deadline provides guidance for what is considered reasonable.  '[A] gross deviation from [the] time limitations [set by the legislature] would be deemed to be unreasonable….'") (*quoting Stull*, 239 Ill. App. 3d at 334).

65.     Because the Automated Enforcement Ordinance purports to authorize administrative adjudications of liability for fines and penalties the City assessed and collected years ago, it violates the due process clause of the Illinois Constitution, rendering the Ordinance and its accompanying fines and penalties illegal, unconstitutional and void *ab initio*.

<u>CLASS ACTION ALLEGATIONS</u>

66.     Plaintiffs bring of this action pursuant to 735 ILCS 5/2-801 of the Illinois Code of Civil Procedure on behalf of a class of similarly situated individuals defined as follows:

All individuals or entities to whom a determination of liability for an alleged violation of 9-101-020 or 9-102-020 of the Municipal Code of Chicago was mailed between March 23, 2010 and May 14, 2015 who did not (i) request or receive a hearing on the violation; or (ii) pay the fine for the violation on or prior to the date the determination of liability was mailed; and as to whom liability for the violation has not been released, set aside or extinguished (the "Class").

67.     The members of the Class are so numerous that joinder of all members is impracticable. Based on investigation by Plaintiffs' counsel, public statements made by the City's Corporation Counsel and publicly available information on the volume of alleged ATL and ASE violations issued by the City, it is estimated that the Class will comprise in excess of one million members. The exact number of members of the Class can be determined from records maintained by the City.

68.     Common questions of law and fact exist as to the Class, including, but not limited to:

 a. Whether the Illinois Vehicle Code authorizes the administrative adjudications created by the Automated Enforcement Ordinance;

 b. Whether the Automated Enforcement Ordinance is illegal and unconstitutional because it purports to authorize the administrative adjudication of alleged ATL and ASE offenses that occurred prior to its effective date in violation of 625 ILCS 5/11-208.3(a);

 c. Whether the Automated Enforcement Ordinance is illegal and unconstitutional because the notice initiating the administrative adjudication of alleged ATL or ASE offenses under the Ordinance is to be served more than 90 days after the alleged offense in violation 625 ILCS 5/11-208.3(b)(3), 625 ILCS 5/11-208.6(d) and 625 ILCS 5/11-208.8(e);

 d. Whether the Automated Enforcement Ordinance is illegal and unconstitutional because it provides that late payment penalties be assessed contemporaneously with the determination of liability in violation of 625 ILCS 5/11-208.3(b)(3); and

 e. Whether the Automated Enforcement Ordinance violates due process by purporting to authorize administrative adjudications of liability for fines and penalties the City already collected years ago.

21

69.     These common questions predominate over questions, if any, affecting solely individual class members.

70.     Plaintiffs will fairly and adequately protect the interests of class members. Plaintiffs have retained competent counsel experienced in class action litigation in state and federal courts nationwide and Plaintiffs have no interest adverse to any class members.  Plaintiffs intend to prosecute this case vigorously on behalf of themselves and the class members.

71.     A class action is an appropriate method for the fair and efficient adjudication of this controversy because it involves the legality and constitutionality of an Ordinance applicable to Plaintiffs and all class members.  A class action can therefore best secure the economies of time, effort and expense or accomplish the other ends of equity and justice that this action seeks to obtain.

## COUNT I
### DECLARATORY, INJUNCTIVE AND OTHER RELIEF
**(Violation of Home Rule Authority)**

72.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

73.     Pursuant to 735 ILCS 5/2-701(a), this Court may "make binding declarations of rights, having the force of final judgments … including the determination … of the construction of any statute, municipal ordinance, or other governmental regulation … and a declaration of the rights of the parties interested."  Such a declaration of rights "may be obtained … as incident to or part of a complaint … seeking other relief as well."  735 ILCS 5/2-701(b).

74.     Plaintiffs seek a judgment declaring that the Automated Enforcement Ordinance is unconstitutional because it exceeds the City's home rule authority as specifically limited by the Illinois Vehicle Code.

75.     Plaintiffs have a personal claim which is capable of being affected and are entitled to the requested declaratory relief.  As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

76.     Plaintiffs possess a clearly ascertainable right to be free from the unconstitutional actions set forth above and are currently in need of protection.  As detailed above, Plaintiffs have raised a fair question concerning the existence of this right.

77.     For the reasons set forth above, Plaintiffs have a likelihood of success on the merits.

78.     Plaintiffs and class members will suffer irreparable harm if an injunction is not granted.  The initiations of administrative adjudications, the collection of fines and penalties related thereto and the threat of vehicle seizure, driver's license revocation, debt collection actions, notifying credit bureaus, filing liens, instituting wage garnishment proceedings and other such actions will cause substantial, immediate and continuing damage to Plaintiffs and class members. As a result, Plaintiffs and class members may suffer irreversible damage to their credit from threatened collection actions by the City and the possible reporting of non-payment to credit agencies, be subject to vehicle seizure and/or driver's license revocation and suffer other harm and inconveniences as a result of the City's implementation and enforcement of the unconstitutional Ordinance.  There is no adequate remedy at law available to Plaintiffs and class members that would protect against the above harms.

79.     To the extent the City has assessed any fines, penalties or other amounts pursuant to the Automated Enforcement Ordinance, all such fines, penalties or other amounts should be declared illegal and void.  To the extent the City has collected any such fines, penalties or other amounts (or applied previously collected such fines, penalties or other amounts) it should be required to refund them.

**WHEREFORE**, Plaintiffs pray that the Court:

A.      Declare that the Automated Enforcement Ordinance is unconstitutional and void;

B.      Grant preliminary and permanent injunctive relief prohibiting the City from implementing and enforcing the Automated Enforcement Ordinance;

C.      Declare that any fines, penalties or other amounts assessed by the City pursuant to the Automated Enforcement Ordinance are illegal and void;

D.      Order the City to refund any and all amounts collected or applied pursuant to the Automated Enforcement Ordinance, including pre- and post-judgment interest;

E.      Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F.      Order such other and further relief as this Court deems equitable, just and proper.

## COUNT II
### DECLARATORY, INJUNCTIVE AND OTHER RELIEF
**(Violation of Prohibition on Adjudication of Offenses Prior to Effective Date of Ordinance, 625 ILCS 5/11-208.3(a))**

80.      Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

81.      Pursuant to 735 ILCS 5/2-701(a), this Court may "make binding declarations of rights, having the force of final judgments … including the determination … of the construction of any statute, municipal ordinance, or other governmental regulation … and a declaration of the rights of the parties interested." Such a declaration of rights "may be obtained … as incident to or part of a complaint … seeking other relief as well." 735 ILCS 5/2-701(b).

82.      Plaintiffs seek a judgment declaring that the Automated Enforcement Ordinance is illegal and unconstitutional because it purports to authorize the administrative adjudication of alleged ATL and ASE offenses that occurred prior to its effective date in violation of 625 ILCS

24

5/11-208.3(a).

83.     Plaintiffs have a personal claim which is capable of being affected and are entitled to the requested declaratory relief.  As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

84.     Plaintiffs possess a clearly ascertainable right to be free from the unconstitutional actions set forth above and are currently in need of protection.  As detailed above, Plaintiffs have raised a fair question concerning the existence of this right.

85.     For the reasons set forth above, Plaintiffs have a likelihood of success on the merits.

86.     Plaintiffs and class members will suffer irreparable harm if an injunction is not granted.  The initiations of administrative adjudications, the collection of fines and penalties related thereto and the threat of vehicle seizure, driver's license revocation, debt collection actions, notifying credit bureaus, filing liens, instituting wage garnishment proceedings and other such actions will cause substantial, immediate and continuing damage to Plaintiffs and class members.  As a result, Plaintiffs and class members may suffer irreversible damage to their credit from threatened collection actions by the City and the possible reporting of non-payment to credit agencies, be subject to vehicle seizure and/or driver's license revocation and suffer other harm and inconveniences as a result of the City's implementation and enforcement of the illegal and unconstitutional Ordinance.  There is no adequate remedy at law available to Plaintiffs and class members that would protect against the above harms.

87.     To the extent the City has assessed any fines, penalties or other amounts pursuant to the Automated Enforcement Ordinance, all such fines, penalties or other amounts should be declared illegal and void.  To the extent the City has collected any such fines, penalties or other amounts (or applied previously collected such fines, penalties or other amounts) it should be

required to refund them.

**WHEREFORE**, Plaintiffs pray that the Court:

A.    Declare that the Automated Enforcement Ordinance is illegal, unconstitutional and void;

B.    Grant preliminary and permanent injunctive relief prohibiting the City from implementing and enforcing the Automated Enforcement Ordinance;

C.    Declare that any fines, penalties or other amounts assessed by the City pursuant to the Automated Enforcement Ordinance are illegal and void;

D.    Order the City to refund any and all amounts collected or applied pursuant to the Automated Enforcement Ordinance, including pre- and post-judgment interest;

E.    Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F.    Order such other and further relief as this Court deems equitable, just and proper.

### COUNT III
#### DECLARATORY, INJUNCTIVE AND OTHER RELIEF
**(Violation of 90-Day Notice Provision, 625 ILCS 5/11-208.3(b)(3), 625 ILCS 5/11-208.6(d) and 625 ILCS 5/11-208.8(e))**

88.    Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

89.    Pursuant to 735 ILCS 5/2-701(a), this Court may "make binding declarations of rights, having the force of final judgments … including the determination … of the construction of any statute, municipal ordinance, or other governmental regulation … and a declaration of the rights of the parties interested." Such a declaration of rights "may be obtained … as incident to or part of a complaint … seeking other relief as well." 735 ILCS 5/2-701(b).

90.  Plaintiffs seek a judgment declaring that the Automated Enforcement Ordinance is illegal and unconstitutional because the notice initiating the administrative adjudication of alleged ATL or ASE offenses under the Ordinance is to be served more than 90 days after the alleged offense in violation 625 ILCS 5/11-208.3(b)(3), 625 ILCS 5/11-208.6(d) and 625 ILCS 5/11-208.8(e).

91.  Plaintiffs have a personal claim which is capable of being affected and are entitled to the requested declaratory relief.  As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

92.  Plaintiffs possess a clearly ascertainable right to be free from the unconstitutional actions set forth above and are currently in need of protection.  As detailed above, Plaintiffs have raised a fair question concerning the existence of this right.

93.  For the reasons set forth above, Plaintiffs have a likelihood of success on the merits.

94.  Plaintiffs and class members will suffer irreparable harm if an injunction is not granted.  The initiations of administrative adjudications, the collection of fines and penalties related thereto and the threat of vehicle seizure, driver's license revocation, debt collection actions, notifying credit bureaus, filing liens, instituting wage garnishment proceedings and other such actions will cause substantial, immediate and continuing damage to Plaintiffs and class members. As a result, Plaintiffs and class members may suffer irreversible damage to their credit from threatened collection actions by the City and the possible reporting of non-payment to credit agencies, be subject to vehicle seizure and/or driver's license revocation and suffer other harm and inconveniences as a result of the City's implementation and enforcement of the illegal and unconstitutional Ordinance.  There is no adequate remedy at law available to Plaintiffs and class members that would protect against the above harms.

27

95.     To the extent the City has assessed any fines, penalties or other amounts pursuant to the Automated Enforcement Ordinance, all such fines, penalties or other amounts should be declared illegal and void.  To the extent the City has collected any such fines, penalties or other amounts (or applied previously collected such fines, penalties or other amounts) it should be required to refund them.

**WHEREFORE**, Plaintiffs pray that the Court:

A.     Declare that the Automated Enforcement Ordinance is illegal, unconstitutional and void;

B.     Grant preliminary and permanent injunctive relief prohibiting the City from implementing and enforcing the Automated Enforcement Ordinance;

C.     Declare that any fines, penalties or other amounts assessed by the City pursuant to the Automated Enforcement Ordinance are illegal and void;

D.     Order the City to refund any and all amounts collected or applied pursuant to the Automated Enforcement Ordinance, including pre- and post-judgment interest;

E.     Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F.     Order such other and further relief as this Court deems equitable, just and proper.

### COUNT IV
### DECLARATORY, INJUNCTIVE AND OTHER RELIEF
**(Illegal Assessment of Late Payment Penalty Contemporaneously**
**with the Determination of Liability, 625 ILCS 5/11-208.3(b)(3))**

96.     Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

97.     Pursuant to 735 ILCS 5/2-701(a), this Court may "make binding declarations of rights, having the force of final judgments … including the determination … of the construction

28

of any statute, municipal ordinance, or other governmental regulation … and a declaration of the rights of the parties interested." Such a declaration of rights "may be obtained … as incident to or part of a complaint … seeking other relief as well." 735 ILCS 5/2-701(b).

98.     Plaintiffs seek a judgment declaring that the Automated Enforcement Ordinance is illegal and unconstitutional because it provides that late payment penalties be assessed contemporaneously with the determination of liability in violation of 625 ILCS 5/11-208.3(b)(3).

99.     Plaintiffs have a personal claim which is capable of being affected and are entitled to the requested declaratory relief. As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

100.     Plaintiffs possess a clearly ascertainable right to be free from the unconstitutional actions set forth above and are currently in need of protection. As detailed above, Plaintiffs have raised a fair question concerning the existence of this right.

101.     For the reasons set forth above, Plaintiffs have a likelihood of success on the merits.

102.     Plaintiffs and class members will suffer irreparable harm if an injunction is not granted. The initiations of administrative adjudications, the collection of fines and penalties related thereto and the threat of vehicle seizure, driver's license revocation, debt collection actions, notifying credit bureaus, filing liens, instituting wage garnishment proceedings and other such actions will cause substantial, immediate and continuing damage to Plaintiffs and class members. As a result, Plaintiffs and class members may suffer irreversible damage to their credit from threatened collection actions by the City and the possible reporting of non-payment to credit agencies, be subject to vehicle seizure and/or driver's license revocation and suffer other harm and inconveniences as a result of the City's implementation and enforcement of the illegal and unconstitutional Ordinance. There is no adequate remedy at law available to Plaintiffs and class

29

members that would protect against the above harms.

103.   To the extent the City has assessed any fines, penalties or other amounts pursuant to the Automated Enforcement Ordinance, all such fines, penalties or other amounts should be declared illegal and void.  To the extent the City has collected any such fines, penalties or other amounts (or applied previously collected such fines, penalties or other amounts) it should be required to refund them.

**WHEREFORE**, Plaintiffs pray that the Court:

A.   Declare that the Automated Enforcement Ordinance is illegal, unconstitutional and void;

B.   Grant preliminary and permanent injunctive relief prohibiting the City from implementing and enforcing the Automated Enforcement Ordinance;

C.   Declare that any fines, penalties or other amounts assessed by the City pursuant to the Automated Enforcement Ordinance are illegal and void;

D.   Order the City to refund any and all amounts collected or applied pursuant to the Automated Enforcement Ordinance, including pre- and post-judgment interest;

E.   Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F.   Order such other and further relief as this Court deems equitable, just and proper.

## COUNT V
### DECLARATORY, INJUNCTIVE AND OTHER RELIEF
**(Violation of Due Process Under the Illinois Constitution)**

104.   Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

105.    Pursuant to 735 ILCS 5/2-701(a), this Court may "make binding declarations of rights, having the force of final judgments … including the determination … of the construction of any statute, municipal ordinance, or other governmental regulation … and a declaration of the rights of the parties interested."  Such a declaration of rights "may be obtained … as incident to or part of a complaint … seeking other relief as well."  735 ILCS 5/2-701(b).

106.    Plaintiffs seek a judgment declaring that the Automated Enforcement Ordinance violates the due process clause of the Illinois Constitution by purporting to authorize administrative adjudications of liability for fines and penalties the City already assessed and collected and/or due to the multiple-year delay between the alleged offense and the initiation of the administrative adjudications under the Ordinance.

107.    Plaintiffs have a personal claim which is capable of being affected and are entitled to the requested declaratory relief.  As detailed above, this case presents an actual controversy that requires an immediate and definitive determination of the parties' rights.

108.    Plaintiffs possess a clearly ascertainable right to be free from the unconstitutional actions set forth above and are currently in need of protection.  As detailed above, Plaintiffs have raised a fair question concerning the existence of this right.

109.    For the reasons set forth above, Plaintiffs have a likelihood of success on the merits.

110.    Plaintiffs and class members will suffer irreparable harm if an injunction is not granted.  The initiations of administrative adjudications, the collection of fines and penalties related thereto and the threat of vehicle seizure, driver's license revocation, debt collection actions, notifying credit bureaus, filing liens, instituting wage garnishment proceedings and other such actions will cause substantial, immediate and continuing damage to Plaintiffs and class members.  As a result, Plaintiffs and class members may suffer irreversible damage to their credit from

31

threatened collection actions by the City and the possible reporting of non-payment to credit agencies, be subject to vehicle seizure and/or driver's license revocation and suffer other harm and inconveniences as a result of the City's implementation and enforcement of the illegal and unconstitutional Ordinance. There is no adequate remedy at law available to Plaintiffs and class members that would protect against the above harms.

111.    To the extent the City has assessed any fines, penalties or other amounts pursuant to the Automated Enforcement Ordinance, all such fines, penalties or other amounts should be declared illegal and void. To the extent the City has collected any such fines, penalties or other amounts (or applied previously collected such fines, penalties or other amounts) it should be required to refund them.

**WHEREFORE**, Plaintiffs pray that the Court:

A.    Declare that the Automated Enforcement Ordinance violates the due process clause of the Illinois Constitution and, therefore, is unconstitutional and void;

B.    Grant preliminary and permanent injunctive relief prohibiting the City from implementing and enforcing the Automated Enforcement Ordinance;

C.    Declare that any fines, penalties or other amounts assessed by the City pursuant to the Automated Enforcement Ordinance are illegal and void;

D.    Order the City to refund any and all amounts collected or applied pursuant to the Automated Enforcement Ordinance, including pre- and post-judgment interest;

E.    Grant an award of reasonable attorneys' fees and all expenses and costs of this action; and

F.    Order such other and further relief as this Court deems equitable, just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues that may be tried and decided by jury.

Dated:  January 26, 2017

Respectfully submitted,

By: _____/s/ Jacie C. Zolna_____
One of Plaintiffs' Attorneys

Myron M. Cherry
mcherry@cherry-law.com
Jacie C. Zolna
jzolna@cherry-law.com
Benjamin Swetland
bswetland@cherry-law.com
MYRON M. CHERRY & ASSOCIATES, LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
(312) 372-2100
Firm No. 39807

Antonio M. Romanucci
aromanucci@rblaw.net
Rebecca Neubauer
rneubauer@rblaw.net
ROMANUCCI & BLANDIN, LLC
321 North Clark Street, Suite 900
Chicago, Illinois 60654
(312) 458-1000
Firm No. 35875

*Attorneys for Plaintiffs and the Class*